WILLIAM B. WILSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 6404-73
United States Tax Court
T.C. Memo 1975-92; 1975 Tax Ct. Memo LEXIS 280; 34 T.C.M. (CCH) 463; T.C.M. (RIA) 750092; April 3, 1975
Vester T. Hughes, Jr., and Sam J. Dealey, for the petitioner. H. Steven New, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, *281 Judge: Respondent has determined that petitioner is liable as transferee of William B. Wilson, Inc., for an income tax deficiency in the amount of $12,513.86 for the taxable year 1968. Petitioner acknowledges that he is liable as a transferee within the meaning of section 6901[1] for the full amount of any deficiency in tax due from William B. Wilson, Inc., but contends no deficiency is due from William B. Wilson, Inc. Due to concessions made by the parties, the only issue remaining for decision is whether Ira Duke Wilson, petitioner's brother, was a shareholder of William B. Wilson, Inc., within the meaning of section 1372(a). FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. William B. Wilson (hereafter referred to as petitioner) resided in Midland, Texas at the time the petition in this case was filed. Both petitioner and William B. Wilson, Inc., (hereafter referred to as the Corporation) filed their tax returns for the periods involved with the district director at Dallas, Texas and with the internal revenue service center, Austin, Texas. William *282 B. Wilson, Inc., was incorporated under the Texas Business Corporation Act on October 30, 1961. The stock of the Corporation consisted of 100,000 shares of common stock with a par value of one cent each. In accordance with the laws of the State of Texas and the Articles of Incorporation, the 100,000 shares of common stock were issued on October 31, 1961 to the following individuals in the amounts indicated: Name
Number of Shares
William B. Wilson
99,998
Ira Duke Wilson
1
Monetta Gauntt
1
As consideration for the 99,998 shares of common stock, petitioner entered into a contract with the Corporation whereby he transferred to the Corporation assets valued at $251,743.03. In addition, petitioner paid into the Corporation $999.98 for the par value of the shares he was issued and $ .02 for the two shares issued in the name of Ira Duke Wilson and Monetta Gauntt. Ira Duke Wilson subsequently paid petitioner one dollar for the share of stock issued in his name, but received no certificate evidencing the share of stock of which he was record owner. Petitioner formed the Corporation primarily to preserve the identity of his separate property under Texas community property *283 law. [2] Ira Duke Wilson (hereafter referred to as Ira) and Monetta Gauntt were made shareholders solely to satisfy what petitioner then regarded as a legal requirement for the Corporation. Ira agreed to become a shareholder in order to accommodate petitioner. Neither Ira nor his wife had any part in the control, management or running of the Corporation. Petitioner did not consult Ira concerning any matter of the Corporation, and neither Ira nor his wife kept themselves informed as to the status of the Corporation. Although Ira was on the board of directors, neither Ira nor his wife attended any board of director's meetings, or any other meetings of the Corporation. In November, 1961 the Corporation filed Form 2553 electing to be treated as an "electing small business corporation" for income tax purposes. Submitted with the Form 2553 was a statement by the stockholders of record *284 of the Corporation consenting to the election of the Corporation to be taxed as an "electing small business corporation." The consent was dated November 25, 1961, and signed by petitioner, Monetta Sue [Gauntt] Wilson, and Ira Duke Wilson. Ira had no independent recollection of signing the consent, but he conceded that it must have been at petitioner's direction. Adele Wilson, who was the wife of Ira Duke Wilson at all times relevant to this matter, did not sign the consent statement submitted and has never signed a consent to the Corporation's election. At the time the consent was executed, petitioner did not realize the legal importance of having Adele Wilson sign the consent statement. The significance of her signature was brought to petitioner's attention in July 1971 when he was being questioned by his accountant in connection with the Government's examination of the Corporation's income tax return for the calendar year 1968. On November 24, 1963, again acting at the request of petitioner, Ira transferred to the petitioner his one share of stock in the Corporation. Neither Ira nor his wife received any consideration for the stock. Pursuant to the election to be treated as *285 an "electing small business corporation" for income tax purposes the Corporation filed U.S. Small Business Corporation Income Tax Returns, Form 1120S, for the taxable years 1961, 1962, 1963, 1964, 1965, 1966, and 1967. These returns were accepted by the Internal Revenue Service and show that the Corporation as an "electing small business corporation" paid no corporate tax on its income but that the taxable income or losses of the Corporation were distributed to the shareholders of the Corporation as follows: William B.
Ira Duke
Monetta Year
Wilson
Wilson
Gauntt
Total
1961
($9,025.81)
($9,025.81)
1962
($33,961.48)
($.34)
($.34)
($33,962.16)
1963
$9,696.66
$.10
$.10
9,696.86
1964
($41,164.99)
($4.04)
($4.04)
($41,173.07)
1965
27,889.30
$.27
$.27
$27,889.84
1966
($9,052.47)
($.09)
($.09)
($9,052.65)
1967
($74,474.68)
($74,474.68)
($130,093.47)
($4.10)
($4.10)
($130,101.67)
Petitioner accounted for his distributive share of the taxable income or losses of the Corporation for the years noted above on his personal tax return. Ira did not know what his distributive share was, and did not account for or report *286 any distributive earnings or losses of the Corporation on his own individual tax return. On December 6, 1968, the shareholders adopted a plan of liquidation to be carried out on or before December 31, 1968. In accordance with the plan, all of the property of the Corporation was transferred to petitioner on or before December 31, 1968. Pursuant to the election to be treated as a Subchapter S Corporation for 1968, the Corporation's income tax return for that year showed that no corporate tax had been paid on its income, but its taxable income was distributed to the shareholders of the Corporation. Petitioner originally included this distributive share of income on his individual return for 1968. Respondent determined; however, and petitioner now concedes, that during the taxable year 1968, the Corporation had gross receipts, more than 20 percent of which were "passive investment income" as defined in section 1372(e) (5) (C), so that Subchapter S treatment was not available for that year. Without regard to any potential net operating loss, the Corporation had a taxable income of $38,660.51 on which the tax is $12,513.86. Respondent had accordingly determined a deficiency in this amount *287 due from the Corporation. Petitioner has executed a Transferee Agreement whereby he assumes and agrees to pay any Federal income taxes finally determined as due and payable for the taxable year ended December 31, 1968, to the extent of his liability as transferee of the Corporation's assets under section 6901. Petitioner contends, however, that the attempted Subchapter S election in 1961 was invalid since Adele Wilson, wife of Ira Duke Wilson, and holder of a community interest in the share of stock issued in his name, failed to sign the consent statement. If the attempted election was invalid, net operating loss carryovers to the year 1968 eliminate any taxable income for the Corporation and no tax is due. If Ira was not a shareholder within the meaning of section 1372(a) neither his consent nor the consent of his wife was necessary for the Subchapter S election, and the election was valid in 1961, making any prior net operating losses unavailable to the Corporation in 1968. OPINION Section 1372(a) provides that an election by a corporation to be taxed under Subchapter S shall be valid *288 "only if all persons who are shareholders in such corporation * * * consent to such election." (Emphasis supplied) Where husband and wife hold the stock as community property, Regulations section 1.1372-3(a) require the consent of both spouses: Each person who is a shareholder of the electing corporation must consent to the election; thus, where stock of the corporation is owned by a husband and wife as community property (or the income from which is community property), or is owned by tenants in common, joint tenants, or tenants by the entirety, each person having a community interest in such stock and each tenant in common, joint tenant, and tenant by the entirety must consent to the election. This Court has likewise held that each spouse must consent when the stock is held as community property. Homer W. Forrester,49 T.C. 499 (1968). Texas is a community property state in which income from both separate and community property is community property. [3] Thus, we believe it is clear that if Ira was required to sign the consent statement, then his wife Adele's *289 signature was also necessary for an effective Subchapter S election. Our decision, therefore, must turn on the question whether Ira himself was a shareholder whose consent to a Subchapter S election is necessary under section 1372(a). Beneficial ownership rather than bare legal title is critical in determining who is a shareholder for purposes of Subchapter S. Alfred N. Hoffman,47 T.C. 218 (1966), affirmed per curiam 391 F. 2d 930 (C.A. 5, 1968); Kean v. Commissioner,469 F. 2d 1183 (C.A. 9, 1972), affirming in part 51 T.C. 337 (1968); Clarence L. Hook,58 T.C. 267 (1972). In Hoffman, we determined that where stock was held by a creditor solely as security and the creditor retained no interest in the corporation apart from her interest as a secured creditor, her consent was not necessary for a Subchapter S election. This Court made a similar *290 determination in Clarence L. Hook,supra. There, a corporation's sole shareholder transferred stock to his attorney in order to terminate an existing Subchapter S election. The attorney paid no money for the stock, rendered no services for it, and did not report the transaction on his own or partnership return. He later returned the stock to petitioner at petitioner's request and without consideration. We held that the beneficial ownership of the stock had not been transferred and that the transaction was without economic substance. [4]
The Subchapter S regulations also recognize that under some circumstances, the record owner will not be treated as the owner for Subchapter S purposes. Treasury Regulations section 1.1371-1 (d) (1) provides in part that: Persons for whom a [sic] stock in a corporation is held by a nominee, agent, guardian, or custodian will generally be considered shareholders of the corporation. * * * *291 On the basis of the facts before us, we have concluded that Ira held the stock as a mere nominee, and that petitioner held the beneficial ownership of Ira's share during the two-year period in which Ira was record owner. It was petitioner and not Ira who exercised effective control over the stock. At no point did Ira take any independent action with respect to his share. Ira became a shareholder only because petitioner felt that three shareholders were necessary to comply with the requirements of state law. Ira consented to this arrangement solely to accommodate his brother. No stock certificate or other evidence of ownership was issued to Ira. While it is true that Ira paid one dollar for his share, the price of the stock had no relation to either the stipulated value of the Corporation's assets or the par value of the stock. During the period of his record ownership, Ira displayed a complete disinterest in the Corporation. Ira did not take part in the control or management of the Corporation. He had no knowledge of the Corporation's activities and sought none. For its part, the Corporation did not consult or inform Ira on its status or activities. In addition, Ira did not account *292 for or report his share of the distributive earnings or losses of the Corporation on his individual tax return. While the amount of these distributive shares would have been minimal, there was no indication by the Corporation to Ira that any of the income or losses were attributable to him. [5]
When petitioner decided he wanted Ira's single share back, Ira transferred the share to petitioner without consideration. In sum, to the Corporation, Ira was nothing more than an additional name on the incorporation papers. He can best be characterized as a mere nominee who lent his name to facilitate petitioner's corporate objectives. Petitioner distinguishes the case law authority in this area on the grounds that Ira held his stock not in the capacity of a trustee or creditor, but as a simple shareholder. In the first instance, we have *293 determined that, on the basis of the facts before us, Ira was merely a "nominee" within the meaning of Regulations section 1.1371-1 (d) (1). We find this regulation to be a reasonable interpretation of section 1371 and consistent with the statutory scheme of Subchapter S. Secondly, while the case law in the area is not directly on point, it does lend analogous support for our conclusion. Clarence L. Hook,58 T.C. 267 (1972), is especially susceptible to analogy. Both here and in Hook, petitioner transferred stock for no or token consideration to a third party in order to achieve a corporate or tax objective. In neither case did the recipient take any action with respect to this stock, except at the direction of petitioner. Similarly, the transfer and holding of the stock in question had no economic effect on its recipients. After the particular objective was accomplished, the stock was transferred back to the petitioner. Petitioner also argues that Ira's small holding in the Corporation and his lack of participation is not controlling in determining whether or not *294 Ira was a bona fide stockholder. We agree. Neither of these two criteria or both in combination controls in deciding who is the beneficial owner of the stock. The token character of Ira's stock holding and the lack of his interest or participation in the Corporation, however, do lend some evidentiary support for respondent's position that Ira's ownership was merely that of a nominee and did not represent a beneficial ownership of the stock. Respondent's position is further supported by the fact that the movement and activity of Ira's stock was wholly within the discretion of petitioner. Petitioner determined that Ira should become a shareholder. Petitioner decided to elect the provisions of Subchapter S and caused his brother to sign the consent. When petitioner concluded that Ira's stock ownership was no longer necessary, petitioner arranged to have the stock transferred to him without consideration. These were the only actions taken with respect to Ira's stock, and the decision for each action was wholly petitioner's. "Objective facts with respect to acts and events occurring both before and after [the] * * * transfer are relevant in ascertaining whether such transfer was bona *295 fide and had economic reality." Clarence L. Hook,supra, at 273. The combination of all of these factual circumstances above discussed lead us to conclude on the basis of the entire record that Ira was not a shareholder within the meaning of section 1372(a). We believe our conclusion to be in harmony with the underlying purposes of Subchapter S. Subchapter S treatment was designed to give business owners greater freedom in selecting their form of business organization. Its provisions are directed at those who have an economic stake in how they are treated for tax purposes. Ira had no economic interest in the Corporation. Since Ira would be unaffected by whether or not Subchapter S treatment is elected, there seems to be no reason why his consent should be required. [6]
Finally, petitioner suggests that since Ira's share gave him a number of rights and powers under Texas law, Ira should be treated as an ordinary shareholder for Federal tax purposes as well. We cannot concur in this view. "The question of who is a shareholder *296 as the term is used in Subchapter S must be determined by federal rather than state law." Kean v. Commissioner,469 F.2d 1183, 1186 (C.A. 9, 1972). See also Old Virginia Brick Company v. Commissioner,367 F. 2d 276 (C.A. 4, 1966). It is also worthy of note that none of these rights under Texas law were ever exercised. Having thus decided that Ira held his one share of stock as a "mere nominee" we conclude that neither Ira's nor his wife Adele's consent was necessary in order for the Corporation to elect the provisions of Subchapter S. The 1961 election was therefore valid. Decision will be entered for the respondent.
Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. The Corporation's business consisted primarily of ranching and related activities. It was petitioner's understanding that the offspring of livestock became community property under Texas law. Petitioner felt that he could avoid this result by transferring the livestock to a separate corporation.↩
3. Tex. Rev. Civ. Stat. Art. 4619. Repealed by Acts 1969, 61st Leg., p. 2707, Chap. 888, Sec. 6 eff. Jan. 1, 1970. See Tex. Fam. Code, Sec. 5.01↩ (1970).
4. See also Henry D. Duarte,44 T.C. 193 (1965) and Michael F. Beirne,52 T.C. 210↩ (1969).
5. See Regulations sec. 1.1371-1 (d) (1) in relevant part: Ordinarily, the persons who would have to include in gross income dividends distributed with respect to the stock of the corporation are considered to be the shareholders of the corporation. * * *↩
6. Alfred N. Hoffman,47 T.C. 218↩ (1966)