GAVIN S. MILLAR, ET AL. [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Millar v. Commissioner
Docket Nos. 5884-72, 5889-72, 5885-72, 5890-72, 5886-72, 5891-72, 5887-72, 5892-72, 5888-72, 5893-72.
United States Tax Court
T.C. Memo 1975-113; 1975 Tax Ct. Memo LEXIS 260; 34 T.C.M. (CCH) 554; T.C.M. (RIA) 750113; April 22, 1975, Filed Edmund W. Ridall, Jr., and R. K. Conrad, for the petitioners. Joseph M. Abele, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: In his notices of deficiency, as supplemented by his amended answers, the respondent has determined deficiencies in Federal income taxes as follows: Petitioner
Docket No.
Year
Deficiency
Total
Gavin S. Millar
5884-72
1963
$10,102.31
1966
41,643.07
1967
65,175.18
$116,920.56
John R. and Suzon G.
Jamison
5885-72
1966
22,542.85
1967
27,161.83
49,704.68
John M., Jr. and
Josephine J. Harmon
5886-72
1966
9,814.20
1967
7,608.32
17,422.52
R. H., III and Jane P.
Jamison
5887-72
1966
29,687.69
1967
34,550.79
64,238.48
Philip D. and Elizabeth
C. Rodgers
5888-72
1966
8,977.63
1967
11,226.19
20,203.82
Philip R. and Helen L.
S. Jamison
5889-72
1966
19,078.54
1967
28,079.60
47,158.14
Marguerite L. Hawkins
5890-72
1966
14,183.98
14,183.98
Alvin D. and Marguerite L.
Hawkins
5891-72
1967
10,864.90
10,864.90
James L. and Betty J.
Tenley
5892-72
1966
$ 8,116.52
1967
10,303.85
$ 18,420.37
Robert K. and Jane H.
Conrad
5893-72
1963
6,781.76
1966
59,220.57
1967
56,877.42
122,879.75
$481,997.20
*262 As regards Robert K. and Jane H. Conrad, the respondent determined an addition to the tax for the taxable year 1967 in the amount of $2,843.87 pursuant to section 6653(a). [2]
The deficiencies determined by the respondent are a result of certain transactions relating to the ownership of the stock of Grant County Coal Corp. The principal questions for decision are as follows: (1) Whether the net operating losses of Grant County Coal Corp. for the taxable years 1964 to 1967, inclusive, are deductible in whole or in part by the petitioners. (2) Whether the petitioners realized income when the stock of Grant County Coal Corp., which was held as security for the payment of a total of $500,000 contributed to the capital of said corporation, was taken over by the lender in accordance with the terms of said loans. (3) Whether there was a sale or other disposition by the petitioners of the stock of Grant County Coal Corp. on account of which there resulted a recapture of the investment tax credit under section 47. FINDINGS OF FACT Some of the facts have been stipulated *263 by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Gavin S. Millar filed Federal income tax returns for the taxable years 1963, 1966, and 1967 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioner's place of residence was Pittsburgh, Pennsylvania. Petitioners John R. Jamison and Suzon G. Jamison filed joint Federal income tax returns for the taxable years 1966 and 1967 and an amended Federal income tax return for the taxable year 1966 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioners' place of residence was Greensburg, Pennsylvania. Petitioners John M. Harmon, Jr., and Josephine J. Harmon filed joint Federal income tax returns for the taxable years 1966 and 1967 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioners' place of residence was Bridgeville, Pennsylvania. Petitioners R. H. Jamison, III and Jane P. Jamison filed separate Federal income tax returns and an amended *264 Federal income tax return for the taxable year 1966 with the district director of internal revenue, Pittsburgh, Pennsylvania. For the taxable year 1967, they filed a joint Federal income tax return with said district director. At the time of the filing of the petition herein, petitioners' place of residence was Greensburg, Pennsylvania. Petitioners Philip D. Rodgers and Elizabeth C. Rodgers filed joint Federal income tax returns for the taxable years 1966 and 1967 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioners' place of residence was Greensburg, Pennsylvania. Petitioners Philip R. Jamison and Helen L. S. Jamison filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Parkersburg, West Virginia. For the taxable year 1967, they filed a joint Federal income tax return with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioners' place of residence was Barrett, West Virginia. Petitioner Marguerite L. Hawkins filed a Federal income tax return for the taxable year *265 1966 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein (docket No. 5890-72), petitioner's place of residence was Roanoke, Virginia. Marguerite L. Hawkins, formerly Marguerite L. Jamison, was married to Alvin D. Hawkins in the year 1967. Petitioners Alvin D. Hawkins and Marguerite L. Hawkins filed a joint Federal income tax return for the taxable year 1967 with the Internal Revenue Service Center, Cincinnati, Ohio. At the time of the filing of the petition herein (docket No. 5891-72), petitioners' place of residence was Roanoke, Virginia. Petitioners James L. Tenley and Betty J. Tenley filed joint Federal income tax returns for the taxable years 1966 and 1967 with the district director of internal revenue, Louisville, Kentucky. At the time of the filing of the petition herein, petitioners' place of residence was Pikeville, Kentucky. Petitioners Robert K. Conrad and Jane H. Conrad filed joint Federal income tax returns for the taxable years 1963, 1966, and 1967 with the district director of internal revenue, Pittsburgh, Pennsylvania. At the time of the filing of the petition herein, petitioner Robert K. Conrad's *266 place of residence was Morewood Avenue, Pittsburgh, Pennsylvania, and petitioner Jane H. Conrad's place of residence was Bayard Street, Pittsburgh, Pennsylvania. R. H. Jamison, Jr., is a member of a prominent Westmoreland County, Pennsylvania, coal mining family. From about 1935 to March 1, 1966, he was the owneroperator of corporations operating strip and deep mines in western Pennsylvania and West Virginia, the best known and most successful of which was Delmont Fuel Co., Hunkers, Pennsylvania, sold to Eastern Gas & Fuel Associates on February 28, 1966. By agreement dated January 31, 1964, Delmont Fuel Co. acquired an option to purchase the equipment and leases of a coal mining property constituting the strip mining operation of White Crest Coal Corp. near Mount Storm, Grant County, West Virginia. Following an engineering study, on May 6, 1964, Delmont Fuel Co. notified the sellers that it would not exercise the option. Thereafter, on May 27, 1964, R. H. Jamison, Jr. (hereinafter sometimes referred to as "Jamison"), obtained an extension of the option in his own right. By the extended date he completed a purchase agreement of the equipment and leases. On July 28, 1964, Jamison *267 caused to be organized the Grant County Coal Corp. (hereinafter referred to as "Grant County"), with its principal office and place of business at Mount Storm, West Virginia. Upon the incorporation of Grant County, the purchase agreement regarding the equipment and coal properties of White Crest Coal Corp. near Mount Storm, West Virginia, was acquired by Grant County. The original shareholders of record and the shares issued in the name of each were as follows: No. of Name
No. of Shares
Certificate
Gavin S. Millar
19.5
1
Robert K. Conrad
19.5
2
R. H. Jamison, III
11
3
John R. Jamison
11
4
Philip R. Jamison
11
5
Josephine J. Harmon
6
6
Mary J. Boneno
6
7
R. H. Jamison, Jr., as
custodian for Marguerite
L. Jamison (now Hawkins)
James L. Tenley
5
9
Philip D. Rodgers
5
10
Total
100
R. H. Jamison, III, John R. Jamison, and Philip R. Jamison are sons of R. H. Jamison, Jr., and at various times were employed by Delmont Fuel Co., providing them with training and experience in the coal industry. Josephine J. Harmon and Marguerite L. Hawkins are daughters of R. H. Jamison, Jr. The third daughter of R. H. Jamison, Jr., Mrs. Barry Boneno, *268 is not a party to this action. Gavin S. Millar, a former Federal bank examiner and presently President of the First National Bank of Youngwood, Pennsylvania, had been employed by R. H. Jamison, Jr., in a financial capacity, primarily as Vice President and Treasurer of Delmont Fuel Co., and, for the periods here involved, was President of Grant County. Philip Rodgers is a brother-in-law of R. H. Jamison, Jr., and a long-term supervisory employee of Delmont Fuel Co. James L. Tenley, a mining engineer, was a longterm supervisory employee of Delmont Fuel Co. R. K. Conrad, a certified public accountant and tax practitioner, has served R. H. Jamison, Jr., and his controlled coal mining corporations in professional and advisory capacities since 1943. On August 27, 1964, Grant County filed an election to be taxed as a subchapter S corporation pursuant to section 1372. The shareholders of record duly signified their consent to such election. During the period from July 28, 1964 to December 20, 1965, Jamison borrowed a total of $500,000 from the Mellon National Bank and Trust Co. (hereinafter referred to as the "Mellon Bank") in order to provide capital for the operations of Grant *269 County. The amounts thus borrowed by Jamison were, in turn, transmitted to each of the shareholders of Grant County, in proportion to their ownership of the stock of that corporation, for contribution by them to the capital of Grant County. Each of said shareholders simultaneously executed an assignment of their stock of Grant County to Jamison and a series of nonrecourse demand notes for the amounts advanced by Jamison and contributed to the capital of said corporation. Gavin S. Millar's assignment, the language of which is the same for the other shareholders except as to the maker, the amount of stock, and the certificate number, is as follows: FOR VALUE RECEIVED, I, Gavin S. Millar hereby sell, assign and transfer unto Richard H. Jamison, Jr. Nineteen and one-half (19.5) shares of the Capital Stock of the Grant County Coal Corporation standing in my name on the books of said corporation represented by Certificate No. 1 herewith and do hereby irrevocably constitute and appoint the said Richard H. Jamison, Jr., my attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises. Dated July 28, 1964 Gavin S. Millar's *270 note of July 28, 1964, the language of which is the same for the other shareholders, and for the other dates, except as to the maker, the amount advanced, and the amount of stock, is as follows: $29,250.00 Greensburg, Pennsylvania July 28, 1964 ON DEMAND after date, I, the undersigned, promise to pay to Richard H. Jamison, Jr. or order, Twenty-nine Thousand Two Hundred Fifty ($29,250.00) Dollars, payable at Greensburg, Pennsylvania, with 5-1/2% interest per annum payable quarter annually from date until paid. To secure payment of this note and the interest and expenses which may accrue thereon, I have deposited with and delivered to Richard H. Jamison, Jr. 19-1/2 shares of the capital stock of Grant County Coal Corporation represented by Certificate No. 1, registered in my name. I hereby authorize Richard H. Jamison, Jr. to collect all amounts which may be or become due on the deposited securities and apply any amounts so collected to the note or interest due thereon and endorse on behalf of and in my name said securities and give receipts in my name for any amounts due or becoming due on said securities. Upon default in the payment of said note or the interest thereon when *271 due, Richard H. Jamison, Jr. or any holder of the note, may at any time or times thereafter sell and make delivery of the said property or any part thereof on any exchange or at any public or private sale without notice, advertisement or demand of any kind and may apply the net proceeds after deducting all costs and expenses of collection, sale and delivery to the payment of this note, or any of said other liabilities connected therewith, returning the residue to me upon my demand. Richard H. Jamison, Jr. or any holder of the note may purchase the property at such public or private sale. This note and the liabilities hereunder are payable solely and only out of the property hereinabove deposited and delivered without other personal liability on my part. This note applies to and inures to the benefit of and binds the heirs, executors and assigns of the parties and shall be construed according to the laws of the Commonwealth of Pennsylvania. IN WITNESS WHEREOF, I, Gavin S. Millar, maker of the above note have executed this note the 28th day of July, 1964. As a result of the foregoing, the stock registered in the name of each of the shareholders of Grant County was held by Jamison *272 as security pursuant to the terms of said assignments to secure the obligations represented by said nonrecourse demand notes from the shareholders of Grant County in the amounts and the dates set forth below: Maker of Note
Date
Amount
Total
Gavin S. Millar
7/28/64
$29,250
9/28/64
29,250
2/12/65
14,625
7/30/65
14,625
12/20/65
9,750
$ 97,500
R. K. Conrad
7/28/64
$ 29,250
9/28/64
29,250
2/12/65
14,625
7/30/65
14,625
12/20/65
9,750
97,500
R. H. Jamison, III
7/28/64
$ 16,500
9/28/64
16,500
2/12/65
8,250
7/30/65
8,250
12/20/65
5,500
$55,000
John R. Jamison
7/28/64
$16,500
9/28/64
16,500
2/12/65
8,250
7/30/65
8,250
12/20/65
5,500
55,000
Philip R. Jamison
7/28/64
$ 16,500
9/28/64
16,500
2/12/65
8,250
7/30/65
8,250
12/20/65
5,500
55,000
Josephine J. Harmon
7/28/64
$ 9,000
9/28/64
9,000
2/12/65
4,500
7/30/65
4,500
12/20/65
3,000
30,000
Mary J. Boneno
7/28/64
$ 9,000
9/28/64
9,000
2/12/65
4,500
7/30/65
4,500
12/20/65
3,000
30,000
R. H. Jamison, Jr.
as custodian for
Marguerite L.
Jamison
7/28/64
$ 9,000
9/28/64
9,000
2/12/65
4,500
7/30/65
4,500
12/20/65
3,000
30,000
James L. Tenley
7/28/64
$ 7,500
9/28/64
7,500
2/12/65
3,750
7/30/65
3,750
12/20/65
2,500
$ 25,000
Philip D. Rodgers
7/28/64
$ 7,500
9/28/64
7,500
2/12/65
3,750
7/30/65
3,750
12/20/65
2,500
25,000
TOTAL
$500,000
*273 In addition to the foregoing, Grant County borrowed the sum of $100,000 from the Mellon Bank on May 11, 1966, to purchase certain equipment. Repayment of this loan was guaranteed by Jamison and was secured by a lien on such equipment. On October 10, 1966, Jamison entered into an agreement with the Mellon Bank whereby all of the stock of Grant County and the notes of the petitioners were assigned and delivered to the Mellon Bank as security for Jamison's loans. Said assignment was solely for the purpose of securing said loans, and did not effect a transfer of the beneficial interest in the stock. On January 23, 1967, Grant County filed a petition under chapter 11 of the Bankruptcy Act in the District Court for the Western District of Pennsylvania. On January 27, 1967, Jamison mailed a demand and acknowledgment to each of the petitioners pursuant to the terms of their notes, thereby declaring himself the owner of the shares of Grant County by reason of a foreclosure thereunder. Each of said demands and acknowledgments was signed by the petitioners and returned to Jamison, signifying their consent thereto. As sole stockholder, Jamison thereupon transmitted a consent to the district *274 director of internal revenue at Parkersburg, West Virginia, consenting to the election of Grant County to be taxed pursuant to subchapter S. On April 11, 1967, Grant County was adjudicated bankrupt. The Mellon Bank foreclosed on its collateral under the note and security agreement of May 11, 1966, pursuant to which the bank had loaned the sum of $100,000 to Grant County. The collateral was sold, leaving a balance of $10,858 due on account of that loan. All of the unsecured personal property of Grant County was sold by the receiver on June 23, 1967. On April 17, 1967, Jamison repaid the sum of $500,000 owing to the Mellon Bank on account of the loans procured by him for the benefit of the former shareholders of Grant County. Upon the repayment of such loans, the Mellon Bank returned to Jamison the 100 shares of stock of Grant County and the notes of the shareholders. During the taxable years 1964 to 1966, inclusive, the interest on the loans procured by Jamison from the Mellon Bank in order to provide the funds for the contribution of capital to Grant County, was paid directly by Grant County. The petitioners, who had signed the notes payable to Jamison in the amount of the contributions *275 to capital on their respective accounts, were carried for interest paid to Jamison upon the payment of such interest by Grant County to the Mellon Bank. The interest paid by Grant County was treated as a withdrawal by petitioners on its books and records and on its income tax returns for the taxable years 1964 to 1966, inclusive. The amounts deducted by petitioners for such interest on their returns are as follows: Amount
Amount
Amount
Deducted
Deducted
Deducted
in 1964
in 1965
in 1966
Gavin S. Millar
$1,126.12
$ 4,349.72
$ 5,931.25
John R. Jamison, et ux
635.25
2,453.69
3,345.83
John M. Harmon, Jr., et ux
346.50
1,338.38
1,825.00
R. H. Jamison, III, et ux
635.25
2,453.69
3,345.84
Philip D. Rodgers, et ux
288.75
1,115.31
1,520.83
Philip R. Jamison, et ux
635.25
2,453.69
3,345.83
Marguerite L. Hawkins
346.50
1,338.38
1,825.01
James L. Tenley, et ux
288.75
1,115.31
1,520.83
Robert K. Conrad, et ux
696.90
4,349.72
5,931.25
$4,999.27
$20,967.89
$28,591.67
Grant County sustained net operating losses in the years and amounts as follows: Year
Amount
1964
$ 65,125
1965
50,192
1966
246,423
1967
223,519
$585,259
*276 Petitioners deducted their pro rata shares of Grant County's net operating losses for the taxable years 1964 through 1966 on their income tax returns for said years as follows: Amount
Amount
Amount
Deducted
Deducted
Deducted
in 1964
in 1965
in 1966
Gavin S. Millar
$12,699.40
$ 9,787.52
$ 48,052.41
John R. Jamison, et ux
7,163.77
5,521.16
27,106.49
John M. Harmon, et ux
3,907.51
3,011.55
14,785.36
R. H. Jamison, III, et ux
7,163.77
5,521.17
27,106.48
Philip D. Rodgers, et ux
3,256.25
2,509.62
12,321.13
Philip R. Jamison, et ux
7,163.77
5,521.17
27,106.49
Marguerite L. Hawkins
3,907.51
3,011.55
14,785.35
James L. Tenley, et ux
3,256.25
2,509.62
12,321.13
Robert K. Conrad, et ux
12,699.40
9,787.51
48,052.40
$61,217.63
$47,180.87
$231,637.24
Millar and Conrad were unable to deduct the full amounts of the losses claimed in the taxable year 1966, and they carried the remainder of such losses back to the taxable year 1963. Millar claimed a carryback net operating loss in the year 1963 in the amount of $25,834.96, which he claimed was comprised of loss of $18,971.02, taxes of $880.49, and interest of $5,983.45. *277 Conrad claimed a carryback net operating loss in the year 1963 in the amount of $27,986.73. Grant County reported investment credits of $3,573.85 and $79,394.36 on its income tax returns for the taxable years 1964 and 1965, respectively. The investment credits were based upon assets having lives ranging from 4 to 15 years, and the assets were purchased during the years 1964 and 1965. The investment credits were duly reflected on the tax returns of the petitioners in accordance with subchapter S. Grant County reported a net recapture of investment credit on its income tax return for the taxable year 1966 in the amount of $751.22. [3] The net recapture reported of $751.22 is comprised of recaptures in the amounts of $3,150.00 and $861.85 for a total recapture of $4,011.85, and investment credits of $56.00, $79.48, $1,724.15 and $1,400.00 for total investment credits of $3,259.63. In his notices of deficiency, the respondent determined that the interests of the petitioners terminated in 1967 and that they realized ordinary income from the discharge of indebtedness in the amount *278 of the tax benefits they previously received. He also disallowed their pro rata shares of Grant County's net operating loss for the taxable year 1966. He also determined that the termination of their interests in Grant County caused them to recapture the investment credits passed through to them. As regards petitioners Robert K. and Jane H. Conrad, he determined that they are liable for an addition to tax pursuant to section 6653(a) for their failure to report the termination of Robert K. Conrad's interest in Grant County and for their failure to report the recapture of investment credit. By amendments to his answers, the respondent determined alternatively that the petitioners' interests in Grant County terminated on October 10, 1966, on the assignment by Jamison to the Mellon Bank and accordingly, that the petitioners realized ordinary income by the discharge of indebtedness in the amount of the tax benefits they had received. Consequently, he determined that the petitioners are not entitled to deduct Grant County's net operating loss for the period October 10, 1966 to December 31, 1966, and that the passed through investment credits must be recaptured as of that date. OPINION
*279 R. H. Jamison, Jr., was an experienced coal mine operator. He saw an opportunity to acquire a strip mining operation which he anticipated could be developed into a profitable venture. He thereupon evolved a plan pursuant to which the mining property could be developed for the benefit of the petitioners, who were either his children or close business associates, without any investment on their part. Jamison incorporated Grant County Coal Corp. and caused its stock to be issued to the petitioners and another shareholder without any consideration on their part. Each of such shareholders consented to an election that the corporation be taxed under subchapter S. In order to provide working capital, Jamison proceeded to borrow the needed funds from the Mellon Bank on his own obligation. These funds were then, in turn, contributed to the capital of Grant County in the names of the shareholders in proportion to their respective shares. Each of the shareholders executed nonrecourse notes, secured by the pledge of their stock, to cover the amounts contributed. A total of $500,000 was contributed to the capital of Grant County in this manner. The strip mining venture proved to be unsuccessful. *280 Grant County sustained net operating losses from the outset. Finally, the corporation went into bankruptcy. As a result, Jamison foreclosed on the nonrecourse notes and took over its stock. He thereupon became sole shareholder of Grant County. During the taxable years 1964 to 1966, inclusive, the petitioners, as shareholders of Grant County, reflected on their individual tax returns the net operating losses and the investment credits available to them as shareholders of a subchapter S corporation. In addition, petitioners deducted as "interest," the payments which had been made by Grant County on account of the interest owing to the Mellon Bank on the loans which had been obtained in the name of Jamison. Such payments were reflected on the books of the corporation as withdrawals by the shareholders. In other words, the corporation undertook to pay for the shareholders' account the interest due on their notes and, as a matter of convenience, made such payments directly to the Mellon Bank to satisfy the liability of Jamison for interest on his obligations to that bank. Section 1374 provides *281 that the shareholders may deduct their respective portions of the net operating loss of a subchapter S corporation, subject to the limitations prescribed therein. Section 1374(c)(2) prescribes the following limitation: (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the *282 corporation). With respect to the net operating losses of Grant County, the questions thus presented are whether petitioners were, in fact, shareholders and, if so, whether the basis for their stock exceeded the amount of the net operating losses reflected in their returns. While the entire transaction was conceived, planned, financed, and executed by Jamison, it does not follow that he should be regarded as owning all the stock of Grant County. The "passive" role of the petitioners in this case was not materially different from that of the other participants in David F. Bolger,59 T.C. 760 (1973). The petitioners were the shareholders of record. As long as the loan was not in default and the creditor had not foreclosed upon the collateral, the petitioners had the right to exercise the same dominion over the stock, including the right to vote the same, as does any shareholder. Industrial Trust Co. v. Commissioner,206 F. 2d 229 (C.A. 1, 1953); Finefrock v. Kenova Mine Car Co.,22 F. 2d 627 (C.A. 4, 1927); Wolf v. Citizens Bank & Trust Co. of Southern Pines,92 F. 2d 233 (C.A. 4, 1937). The petitioners *283 fully exercised their rights as shareholders. They executed the requisite consents for the corporation to be taxed under subchapter S. They executed the notes pledging their stock as security for contributions to the capital for the corporation. The net operating losses and investment credits of the corporation were reflected in their individual returns. If any of the petitioners had elected to pay off the notes, they would have been entitled to receive their shares of the stock of the corporation free and clear. The mere fact that such stock was pledged to secure indebtedness does not change the character of the transaction. For all the record shows, petitioners acquired their stock without any consideration. They started out with a zero basis. However, contributions to the capital of the corporation were made for their account totaling $500,000, evidenced by a series of nonrecourse notes and secured by the pledge of their stock. It is not necessary to determine whether such advances are to be treated as "debt" or as "gifts." [4] As a debt, the amount would be includable in the basis of the shareholders under the so-called Crane doctrine. Crane v. Commissioner,331 U.S. 1 (1947); *284 David F. Bolger,supra. As gifts, the amounts contributed would likewise become a part of the donees' basis. Accordingly, the total amount of $500,000 contributed to the capital of Grant County for the accounts of the shareholders reduced by the withdrawals charged to their accounts because of the payment of interest, became a part of their adjusted basis for their stock. Since the basis thus computed at all times exceeded their respective portions of the net operating losses of the corporation, the limitations of section 1374(c)(2) do not affect the losses to which the petitioners were otherwise entitled. [5]
In the event that the loans of $500,000 are held to constitute *285 contributions to the capital of the corporation by the shareholders, the respondent contends that there was a "foreclosure," resulting in a sale or other distribution by the petitioners of their stock on October 10, 1966, when Jamison assigned their notes and the pledged stock to the Mellon Bank as security for his loans. Respondent's argument is predicated on the form of the assignment. This argument is wholly lacking in merit. It is a common practice when a borrower pledges property to secure a bank loan for the borrower to execute an assignment of the pledged property to the lender. The mere execution of such assignment does not constitute a sale or exchange of the pledged property. On the other hand, it is equally clear that there was a "foreclosure," resulting in a sale or exchange by the petitioners of their stock on or about January 27, 1967, when Jamison duly notified the petitioners that he was taking over the ownership of their stock in payment of the obligations to him. Helvering v. Hammel,311 U.S. 504 (1941); Electro-Chemical Co. v. Commissioner,311 U.S. 513 (1941). The rule applies irrespective whether the taxpayer is personally *286 liable on the obligations for which the property is pledged. Edward F. C. McLaughlin,43 B.T.A. 528 (1941). See also Rev. Rul. 67-188, 1967-1 C.B. 216. Woodsam Associates, Inc.,16 T.C. 649 (1951), affd. 198 F. 2d 357 (C.A. 2, 1952); George Hewitt Myers, 3 T.C. 1044 (1944).See also Daniel O'Madigan, Jr.,T.C. Memo. 1960-212, 19 T.C.M. 1178 (1960). By the same token, the stock in the hands of the petitioners was a capital asset. The petitioners had held the stock for more than six months. The contributions to capital likewise antedated the sale or foreclosure by more than six months. Accordingly, the resulting gain which the petitioners realized is taxable as a gain from the sale or exchange of a capital asset held for more than six months. Having concluded that the petitioners' interest in Grant County terminated on the foreclosure, there remains the question whether the petitioners must recapture the investment credits claimed by them in years prior to 1967. With respect to the investment credits, section 47(a)(1) provides for a recapture in the event of the disposition of the property *287 on account of which credits were claimed before the expiration of its useful life. [6]
During 1964 and 1965, Grant County purchased certain section 38 properties having lives ranging from 4 to 15 years. As defined by section 48, section 38 property means tangible personal property and certain *288 other tangible property with respect to which depreciation is allowable and having a useful life of 4 years or more. Section 38 allows the purchaser to apply a direct credit for investment in such property against his income tax liability for the year of purchase. For a subchapter S corporation, section 48(e) directs that the credit shall be apportioned pro rata among the shareholders on the last day of the taxable year. Grant County reported investment credits available to its shareholders in the amounts of $3,573.85, $79,394.36, and $3,259.63 on its income tax returns for the taxable years 1964, 1965, and 1966. All of the petitioners claimed investment credits against tax based upon the investment credits reported by Grant County. Due to the dual nature of a subchapter S corporation, section 1.47-4(a)(2), Income Tax Regs., provides that investment credits of an electing small business corporation must be recaptured when a shareholder disposes of his stock. It is clear that before the close of the estimated useful lives of the section 38 properties, the petitioners *289 disposed of their stock in Grant County through the foreclosure. Therefore, since the section 38 property ceased to be section 38 property as to the petitioners at that time, the petitioners must recapture the investment credits passed through to them in prior years. Charbonnet v. United States,455 F. 2d 1195 (C.A. 5, 1972), affirming 320 F. Supp. 874 (E.D. La. 1971). The fact that section 1.47-4(a)(2) was not promulgated until after the occurrence of the event which triggered recapture does not change the result. Charbonnet v. United States,supra. See Helvering v. Reynolds,313 U.S. 428 (1941); Manhattan Co. v. Commissioner,297 U.S. 129 (1936). Our decision in Henry C. Mueller,60 T.C. 36 (1973), would in any event require the petitioners to recapture the investment credits on the adjudication of bankruptcy. In conclusion, the respondent determined that petitioners Conrad are liable for an addition to tax for the year 1967 pursuant to section 6653(a) for their failure to report income and a recapture of investment credit on the disposition of the Grant *290 County stock. Such determination is presumed correct. Robert Conrad, an experienced tax practitioner, gave no justifiable reason for his failure to reflect the sale or other disposition of the stock on his return. Accordingly, the determination of the respondent as to this issue is sustained. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith for purposes of trial, briefs, and opinion: John R. Jamison and Suzon G. Jamison, docket No. 5885-72; John M. Harmon, Jr. and Josephine J. Harmon, docket No. 5886-72; R. H. Jamison, III and Jane P. Jamison, docket No. 5887-72; Philip D. Rodgers and Elizabeth C. Rodgers, docket No. 5888-72; Philip R. Jamison and Helen L. S. Jamison, docket No. 5889-72; Marguerite L. Hawkins, docket No. 5890-72; Alvin D. Hawkins and Marguerite L. Hawkins, docket No. 5891-72; James L. Tenley and Betty J. Tenley, docket No. 5892-72, and Robert K. Conrad and Jane H. Conrad, docket No. 5893-72.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Grant County incorrectly computed the net recapture to be $751.22. The correct figure is $752.22.↩
4. Among the gifts specifically enumerated when the predecessor to sec. 2511 was first enacted as sec. 501 of the Revenue Act of 1932 were transfers of property by a taxpayer to a corporation owned by his children. H. Rept. No. 708, 72nd Cong., 1st Sess., p. 27. ↩
5. In their brief, the petitioners for the first time advance the argument that they are entitled to proportionate shares of Grant County's 1967 operating losses. Respondent takes the position that this issue has not been properly raised. We agree.↩
6. (a) General Rule.--Under regulations prescribed by the Secretary or his delegate-- (1) Early Disposition, etc.--If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38↩ property.