William B. WILSON,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 75–2775.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1977.

Sam J. Dealey, Vester T. Hughes, Jr., Dallas, Tex., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Gilbert Andrews, Chief, Appellate Sec., Jonathan S. Cohen, Sharon A. Darling, Ernest J. Brown, Tax Div., U. S. Dept. of Justice, Washington, D. C., Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge.

Subchapter S of the Internal Revenue Code provides a method for certain electing close corporations to exempt themselves from corporate income taxes. Their income is taxable directly to the shareholders, all of whom must consent to such treatment. The question in this case is whether William B. Wilson, Inc. validly elected to come within subchapter S. That question in turn depends upon the definition of "shareholder" for purposes of determining who must consent. More particularly, the issue is whether that term extends to an individual who was the record holder of one out of 100,000 shares issued at one cent par but who held the share only to accommodate his brother, never assumed any role in the corporation, never actually received a stock certificate, neither received nor reported any income or loss with respect to the share, and surrendered the share upon request for no consideration. This issue arises because the individual's wife did not consent to subchapter S treatment, and her consent would concededly have been required in this community property state had the individual been a "shareholder." We conclude that beneficial, not mere record, ownership of a share is a prerequisite to "shareholder" status, and we uphold the Tax Court's determination that the individual here was not a shareholder. This corporation therefore came within subchapter S despite the absence of the wife's consent.

I.

Appellant William B. Wilson, a Midland, Texas rancher, incorporated his business on October 30, 1961, under the name William B. Wilson, Inc.[1] Believing that Texas law

---

1. Wilson was a non-practicing lawyer. He organized the corporation to prevent his livestock's offspring from becoming community property after his impending marriage.

required a corporation to have three shareholders, appellant enlisted the aid of his fiancee Monetta Gauntt and his brother Ira Duke Wilson. Appellant caused the corporation to issue 100,000 shares of stock at one cent par, for which he paid the entire $1,000. He took 99,998 shares, and the corporation issued one share each to Ira and Monetta.[2] At some later time Ira paid appellant one dollar for the share issued in his name. Ira never received a stock certificate.

In November 1961 the corporation filed the appropriate IRS form electing subchapter S treatment. Appellant, Ira and Monetta executed the accompanying consent statement. Ira's wife, Adele Wilson, was not asked to sign the statement and has never consented to the election.

In November 1963 Ira transferred his share to appellant. The transfer, made at appellant's request, was without consideration. During his two years as a record shareholder, Ira had taken no action whatsoever with respect to the corporation other than his execution of the subchapter S consent. Although he was also a director, he attended no meetings, received no informa-

tion, and neither requested nor was asked to assume any role in corporate affairs.

The corporation and appellant successfully claimed subchapter S treatment for each year from 1961 through 1967. Accordingly, the corporation paid no tax on its income. The corporation suffered losses in five of those seven years, and its net loss for the seven-year period exceeded $130,000. In 1961 appellant deducted on his individual return the corporation's entire loss. From 1962 through 1966 appellant reported a proportionate share of the earnings or losses. He computed his share for each year as though he held 99,998 of 100,000 shares.[3] In 1967 appellant deducted the corporation's entire loss.[4] No one questioned the propriety of the 1961 through 1967 tax returns, and those years are apparently closed.

In December 1968 the corporation was liquidated and all its assets transferred to appellant. He included his distributive share of the corporation's 1968 income on his individual return.[5] The corporation submitted a return pursuant to subchapter S indicating that no corporate tax was payable. The Commissioner determined, however, that subchapter S treatment was inap-

---

2. Appellant also transferred to the corporation assets valued at $251,743.03.

3. The attribution did not change upon Ira's 1963 transfer of his share to appellant. Apparently because of a misplaced decimal point in

the calculation of Ira's and Monetta's share for 1964, in that year appellant claimed $7.26 more than the amount which would have been appropriate had he held 99,998 of 100,000 shares. See note 4 infra.

4. The following chart shows the corporate earnings and their attribution to the shareholders.

| Year | William B. Wilson | Ira Duke Wilson | Monetta Gauntt | Total |
|---|---|---|---|---|
| 1961 | ($9.025.81) | –0– | –0– | ($9,025.81) |
| 1962 | ($33,961.48) | ($.34) | ($.34) | ($33,962.16) |
| 1963 | $9,696.66 | $.10 | $.10 | 9,696.96 |
| 1964 | ($41,164.99) | ($4.04) | ($4.04) | ($41,173.07) |
| 1965 | 27,889.30 | $.27 | $.27 | $27,889.84 |
| 1966 | ($9,052.47) | ($.09) | ($.09) | ($9,052.65) |
| 1967 | ($74,474.68) | –0– | –0– | ($74,474.68) |
| Totals | ($130,093.47) | ($4.10) | ($4.10) | ($130,101.67) |

5. The record does not reflect the amount appellant claimed; it is stipulated only that he claimed his "distributive share."

propriate because the corporation's "passive investment income" exceeded twenty percent of its gross receipts for that year. See I.R.C. § 1372(e)(5)(C). Finding that the corporation owed $12,513.86 in taxes on its 1968 income of $38,660.51, the Commissioner sent a notice of liability to appellant, who is concededly the corporation's transferee under § 6901 and who therefore would be liable for any 1968 corporate deficiency. Appellant filed suit in the Tax Court. Unable to fault the Commissioner's conclusion that subchapter S treatment was inappropriate for 1968, appellant challenged the liability determination on the grounds that subchapter S treatment had been improper all along because of Adele's failure to sign the consent in 1961. Accordingly, he argued, the pass through of the 1967 corporate losses to appellant individually had been made in error, and those losses properly remained with the corporation, available for carryover to 1968. The effect of such a conclusion would be to provide the corporation with sufficient carryover losses to offset all the corporation's 1968 income, eliminating any corporate tax liability for that year. The Tax Court rejected appellant's position, 34 T.C.M. 463 (1975), and he appeals. The sole issue before us is whether Adele's consent to subchapter S treatment was necessary. The Commissioner concedes that if Ira was a "shareholder" for consent purposes, appellant must prevail.[6]

## II.

A corporation's election of subchapter S treatment is valid "only if all persons who are shareholders in such corporation . . . consent to such election." I.R.C. § 1372(a). One reason for this requirement is the effect that subchapter S election has on a shareholder's individual taxes. A shareholder must include in income his proportionate share of the electing corporation's undistributed taxable income, I.R.C. § 1373, and may deduct his share of the corporation's net operating losses, I.R.C. § 1374. Congress authorized these tax consequences only for individuals who choose them.

This rationale for the consent requirement provides the backdrop for our inquiry. For purposes of the consent provision, the term "shareholders" must mean those who bear the tax consequences of the election. See Treas.Reg. § 1.1371–1(d).[7] Because beneficial ownership of stock, not mere record ownership or other formal indicia, determines who bears those tax consequences,[8] beneficial ownership also provides the standard for determining who must consent to the subchapter S election. See *Pacific Coast Music Jobbers, Inc. v. Commissioner*, 457 F.2d 1165 (5th Cir. 1972); *Kean v. Commissioner*, 469 F.2d 1183 (9th Cir. 1972); *Hook v. Commissioner*, 58 T.C. 267 (1972); *Hoffman v. Commissioner*, 47 T.C. 218 (1966), aff'd on basis of tax court opinion, 391 F.2d 930 (5th Cir. 1968).[9]

---

6. The Commissioner does not contend that, even if defective in 1961, the election became valid when Ira gave up his share in 1963.

7. Treas.Reg. § 1.1371–1(d) provides in part: Ordinarily, the persons who would have to include in gross income dividends distributed with respect to the stock of the corporation are considered to be the shareholders of the corporation.

   This regulation deals expressly with the definition of shareholder for the purpose of determining whether a corporation meets the subchapter S requirement that it have ten or fewer shareholders. Although that definition need not always accord with the definition of shareholder for the purpose of determining who must consent to the subchapter S election,

courts have applied the quoted sentence to this latter issue. See *Kean v. Commissioner*, 469 F.2d 1183 (9th Cir. 1972); *Hoffman v. Commissioner*, 47 T.C. 218 (1966), aff'd on basis of tax court opinion, 391 F.2d 930 (5th Cir. 1968).

8. See *Beirne v. Commissioner*, 52 T.C. 210 (1969); *Duarte v. Commissioner*, 44 T.C. 193 (1965).

9. Appellant cites *W & W Fertilizer Corp. v. United States*, 527 F.2d 621 (Ct.Cl.1975), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976) for the proposition that formal, not beneficial, ownership controls. That case, however, dealt with a different issue: the definition of shareholder for purposes of the rule that a subchapter S corporation can have no

We need not and do not attempt in this opinion to articulate an overriding standard for determining beneficial ownership. Shareholders in close corporations generally have some role (however formal or minor) in corporate governance, bear a risk of corporate failure, and stand to share in corporate successes. The extent to which the individual in question exhibits these characteristics helps determine whether he is a beneficial shareholder.[10] These characteristics are generally evidenced by the parties' understanding of their relationship to the corporation and by their behavior both before and after the challenged transaction. That understanding and behavior provide a much more reliable guide than the formal rights that may exist between the parties. No one criterion is controlling; different factors will carry weight in different contexts.[11]

We recognize the interest in providing rules clearly specifying the "shareholders" who must consent to an election.[12] Other things being equal, it would be desirable for

taxpayers to know whether they had complied with the subchapter S prerequisites. But at least when, as here and in *Hook v. Commissioner*, 58 T.C. 267 (1972), the issue is whether a record shareholder also qualifies as a beneficial shareholder, taxpayers can assure qualification by securing the consent of all record shareholders.[13] In any event the interest in certainty must yield to the rule that those whose taxes are affected by the subchapter S election must give their consent.

Before turning to apply the governing principles to the case at bar, we must determine the scope of review of the Tax Court's decision. The issue of the appropriate standards for determining beneficial ownership is of course a question of law with respect to which our review is plenary. Given the proper standards, however, the question whether an individual meets them and qualifies as a beneficial shareholder is one of fact. If the finder of fact applies the correct principles, we must uphold the decision unless it is clearly erroneous.[14]

---

shareholders other than individuals. The requirements that shareholders be individuals and that they give their consent serve distinct purposes; the definitions of shareholder need not be the same. A conclusion that formal ownership governs the *W & W Fertilizer* issue therefore would not be inconsistent with the well established rule that beneficial ownership determines who must consent to the subchapter S election.

**10.** Additional considerations may affect other cases. We do not attempt to formulate exclusive or comprehensive factors.

**11.** The Commissioner renounces reliance on any suggestion that Ira's one-share holding was de minimis. As the Commissioner concedes, a subchapter S election requires the consent of the holder of even a single share having little value and representing an inconsequential proportion of the business. The Commissioner's contention is solely that in substance Ira was not the holder of even a single share.

**12.** The Commissioner of course does not assert, and we would view as frivolous, any suggestion that Congress intended the shareholder's path to subchapter S treatment to be a tortuous one.

We attribute no significance to the choice of the meandering "S" as a label. Subchapter O, after all, is not well rounded; subchapter L does not turn square corners; and subchapter I is not straightforward. We view as mere coincidence the fact that subchapter X is unknown and subchapter M has its ups and downs.

**13.** Even in the converse situation when the issue is whether someone not a record holder is a beneficial owner, courts have consistently held that beneficial ownership is the governing standard. *See Pacific Coast Music Jobbers, supra; Kean v. Commissioner, supra; Hoffman v. Commissioner, supra.*

**14.** Our prior decisions have not expressly invoked the clearly erroneous standard but are consistent with our conclusion that that standard applies. *See Pacific Coast Music Jobbers, Inc. v. Commissioner*, 457 F.2d 1165, 1173 (5th Cir. 1972) (concluding that evidence was "quite sufficient to uphold the Tax Court's conclusion"); *cf. Rupe Investment Co. v. Commissioner*, 266 F.2d 624 (5th Cir. 1959) (framing beneficial ownership question in non-subchapter S setting as "whether the Tax Court drew the correct inferences from the undisputed facts").

In the case at bar the Tax Court applied the appropriate standards.[15] The question before us is therefore whether that court's conclusion that Ira was not the beneficial owner of any stock is clearly erroneous. We conclude that it is not.

The circumstances indicate that Ira became record holder of a single share solely to accommodate his brother but that he never sought or received any of the incidents of ownership that would give the transaction economic substance. Ira took no part in corporate activities and exhibited no interest in them. He earned no return and did not report his proportionate share of the corporate earnings. He readily surrendered his share without consideration.[16] In sum, Ira's objective behavior would have been no different had there been an explicit agreement that he would hold a share in name only, having no right to participate in corporate affairs or earnings, and having no power to alienate his share or even to retain it against a request for its return. The absence of such an explicit agreement does not undermine the conclusion that Ira held no beneficial interest; in these cases we must often rely upon the circumstantial evidence that the parties' observable behavior provides.

Appellant emphasizes that both he and Ira, called as witnesses by the opposing sides, testified that they considered Ira a shareholder. Even if we were to assume that they used the term in accordance with its meaning under the relevant tax provision, the contrary inferences properly drawn from their behavior would entitle the finder of fact to conclude that Ira was not a beneficial shareholder. Although, as the government concedes, the evidence would be consistent with a finding for appellant, it is also consistent with the Tax Court's contrary conclusion. The Tax Court's determination is not clearly erroneous.

In reaching our result we have emphasized the facts here rather than undertaken a detailed analysis of the factual patterns in other cases. In this area precedents provide only limited guidance. We pause briefly, however, to reject the appellant's argument that the result here is inconsistent with *Millar v. Commissioner*, 34 T.C.M. 554 (1975), *vacated on other grounds*, 540 F.2d 184 (3d Cir. 1976). In *Millar*, R. H. Jamison, Jr. organized a corporation and provided its funding but took none of its stock. The record shareholders consented to the subchapter S election, and the Tax

**15.** Appellant disagrees, emphasizing the Tax Court's use of part of Treas.Reg. § 1.1371–1(d):
> Persons for whom a stock in a corporation is held by a nominee, agent, guardian, or custodian will generally be considered shareholders of the corporation . . . .

The applicability of this language to the consent issue is not free from doubt. *See* note 7 *supra*. Appellant focuses however, not on the regulation's relevance but on the Tax Court's conclusion that Ira was a "nominee." Citing cases from other contexts purportedly defining that word, appellant argues that the Tax Court ascribed to "nominee" an unduly broad meaning. We disagree. We reject any attempt to divine that term's universal meaning. We read the regulation to mean simply that the governing standard is not record or formal ownership but rather that concept that, for want of a better word, courts have labeled beneficial ownership. The Tax Court did not waver in its adherence to the appropriate standard. That court, like the regulation, used "nominee" as a

convenient phrase to express a result rather than as a substantive concept that aided analysis. The regulation is but another indication that the task before us is to ferret out the real owners of the corporation's stock.

**16.** We note that the corporation's apportionment of its earnings and losses among its shareholders did not change in 1963 when Ira surrendered his share. The corporation continued to show as Ira's share 1/100,000. Appellant asserts that this indicates only that the corporation was not too closely in touch with its accountant. Presumably, however, had the transaction carried real substance, those concerned might have brought the transfer to the accountant's attention.

In addition, the corporation did not assign Ira any share of the corporate losses for 1961. While the amount of Ira's share would have been nominal, our conclusion is not undermined by this initial failure to include Ira as a shareholder.

Court held that those shareholders were entitled to deduct their proportionate shares of the corporate losses. Unlike in the case at bar, the shareholders at issue in *Millar* "fully exercised their rights as shareholders," 34 T.C.M. at 563,[17] and reported their shares of corporate losses on their individual returns. Jamison, whom appellant here attempts to analogize to himself, owned no stock and claimed no losses. Nothing in *Millar* suggests that a record shareholder who takes absolutely no part in corporate affairs and who holds his share only at the request of a predominating shareholder automatically qualifies as a "shareholder" for purposes of the consent provision of subchapter S.

Indeed, the other authorities strongly support our conclusion that Ira did not come within the beneficial ownership standard. In *Hook v. Commissioner*, 58 T.C. 267 (1972), the case bearing the closest factual resemblance to ours, the sole shareholder transferred 5,000 shares to his attorney. Exactly as in the case at bar, the attorney took no action as a shareholder, failed to reflect the transaction on his tax return, and surrendered the shares upon request without consideration. The court concluded that the attorney's consent to subchapter S treatment was not required. Just as Ira took his share to assist his brother, in *Hook* the attorney accepted his shares "as an accommodation to a valued client." 58 T.C. at 276.[18] *See also Hoffman v. Commissioner, supra; Pacific Coast Music Jobbers, Inc.*

*v. Commissioner, supra; Kean v. Commissioner, supra. Cf. Beirne v. Commissioner*, 52 T.C. 210 (1969) (applying beneficial ownership concept for purposes of determining to whom a subchapter S corporation's income was allocable); *Duarte v. Commissioner*, 44 T.C. 193 (1965) (same); *Rupe Investment Co. v. Commissioner*, 266 F.2d 624 (5th Cir. 1959) (applying beneficial ownership concept for purposes of record holder's taxation regarding non-subchapter S corporation's dividends and record holder's subsequent "sale" of shares at loss).

Because Ira was not a beneficial shareholder, his wife's consent to subchapter S taxation was not necessary. The 1961 election was therefore valid, and the corporation's 1967 losses were properly allowed to the shareholders. The losses were not available for carryover to 1968, and because of that year's subchapter S termination, the corporation was accountable for income taxes. As transferee, appellant is liable for those taxes.

We do not today write for all shareholders or all corporations in the shadow of subchapter S. We attempt economic realism and an avoidance of making the S more sinuous than corporate life demands. We simply posit the proposition that not every person whose name appears on a certificate of stock or on a stock ledger is a shareholder who must consent to subchapter S election.

The Tax Court's decision is

AFFIRMED.

---

17. Appellant notes that the only rights the *Millar* opinion expressly states the shareholders exercised were the electing of subchapter S, the pledging of their stock, and the claiming of corporate losses on their individual returns. The opinion does not, however, indicate they exercised no other rights, and as the sole record shareholders they presumably performed the formal tasks that must be performed by shareholders. Moreover, there was apparently no question that corporate earnings, which were sought but never materialized, would have inured to the benefit of the record shareholders.

18. In *Hook* the sole shareholder sought to terminate the subchapter S election effective in 1966. He had missed the January 31, 1966 deadline for voluntary termination, *see* I.R.C. § 1372(e)(2), and he claimed that the December 1966 transfer to his attorney, coupled with the attorney's refusal to consent to the continuation of subchapter S treatment, revoked the subchapter S election for 1966. *See* I.R.C. § 1372(e)(1). The court expressly reserved the question whether the apparent purpose of avoiding subchapter S continuation would support its result, relying wholly on the attorney's lack of beneficial ownership irrespective of tax avoidance motives.