Harold C. & Margaret I. KEAN,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

Inga L. BARDAHL, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

Ole BARDAHL, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

Murdock D. & Mary Ellen MacPHER-
SON, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

William R. & Dorothy L. MacPHER-
SON, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

C. E. MILAM & Verda Milam, Petitioners-
Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

Nos. 24843–24848.

United States Court of Appeals,
Ninth Circuit.

Nov. 14, 1972.

Rehearing Denied Dec. 18, 1972.

Gerald R. Hergert (argued), Joseph H. Trethewey, Seattle, Wash., for appellants.

Paul M. Ginsburg (argued), K. Martin Worthy, Chief Counsel, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., for appellee.

Before HAMLEY and KILKENNY, Circuit Judges, and WM. MATTHEW BYRNE, Jr., District Judge.*

WM. MATTHEW BYRNE, Jr., District Judge:

Appellants, petitioners in the Tax Court, were shareholders in Ocean Shores Bowl, Inc., hereinafter referred to as Bowl, a Washington corporation. They appeal from a judgment of the Tax Court, 51 T.C. 337, invalidating Bowl's election under Subchapter S, §§ 1371–1379 of the Internal Revenue Code of 1954, and disallowing petitioners' deductions on their personal tax returns of their pro rata shares of Bowl's 1962 and 1963 net operating losses.

Bowl was formed on March 20, 1962 and had only one class of stock issued and outstanding. On October 30, 1962 Bowl filed a timely election to be taxed as a small business corporation pursuant to § 1372 of the Internal Revenue Code of 1954. Consents to such election were contemporaneously filed by all of the shareholders of record and their wives. As a result of the election, Bowl's net operating losses of $15,316 for the short taxable year 1962 and $56,638.28 for 1963 were deducted in pro rata shares by petitioners on their 1962 and 1963 personal income tax returns.

Some Bowl debentures and 125 shares of Bowl stock were held in the name of petitioner, William MacPherson. He and his brother, petitioner Murdock MacPherson, were engaged in the real estate business in a company called MacPhersons, Inc. Each brother owned 45% of the stock of MacPhersons, Inc. with the remaining 10% being held by their mother. William and Murdock MacPherson had many joint investments which were conducted without any written agreement. Whoever initiated the investment would normally be responsible for its management. Neither held a power of attorney for the other. The books and records of MacPhersons, Inc. were maintained by its employee, Donald Minkler.

On their 1962 joint income tax return William MacPherson and his wife deducted the net operating loss of Bowl accruing to the 125 shares in William's name. In 1963 William MacPherson and his wife deducted one half of the net operating loss for that year attributed to said shares while Murdock MacPherson and his wife deducted the other one half on their joint return. In 1964 the William MacPhersons and the Murdock MacPhersons each reported the sale of one half of the 125 shares of Bowl stock and one half of the Bowl debentures. All of these returns were prepared by Donald Minkler.

A 1965 Internal Revenue Service audit disclosed that the 125 shares of Bowl stock and Bowl debentures, issued to William MacPherson in 1962, were purchased with a MacPhersons, Inc. check. The cost of the purchase was charged on the books of MacPhersons, Inc. equally against the drawing accounts of William and Murdock. Murdock MacPherson has never been repaid by William MacPherson for the amounts taken out of his drawing account to pay for the stock and debentures.

Murdock MacPherson was not a shareholder of record of Bowl. Neither he nor his wife were mentioned in the Subchapter S election filed with the Internal Revenue Service in October, 1962; nor

---

* Honorable Wm. Matthew Byrne, Jr., United States District Judge, Central District of California, sitting by designation.

did they file a consent to the election. None of the other shareholders knew that Murdock MacPherson was involved in any way with Bowl until the 1965 audit.

The Tax Court held that Bowl's Subchapter S election was invalid because Murdock MacPherson, as a beneficial owner of Bowl stock, was a shareholder within the meaning of § 1372 and had not consented to the corporation's election. Based on this finding, the court disallowed petitioners' deduction of their pro rata shares of the corporation's net operating losses.

Subchapter S of the Internal Revenue Code of 1954 allows a small business corporation, as defined by § 1371, to elect to be exempt from corporate income taxes with the consequence that its shareholders are taxed directly on the corporation's earnings or may deduct the corporation's losses. Section 1372 provides that the corporation's election is "valid only if all persons who are shareholders . . . consent to such election."

■ Petitioners contend that since Murdock MacPherson was not a shareholder of record and was not able to exercise any rights as a shareholder under Washington law, he was not a "shareholder" under § 1372. We disagree. The question of who is a shareholder as the term is used in Subchapter S must be determined by federal rather than state law. Putnam's Estate v. Commissioner of Internal Revenue, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945); Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Old Virginia Brick Company v. Commissioner of Internal Revenue, 367 F.2d 276 (4th Cir. 1966). Treasury Regulation § 1.1371–1(d)(1), implementing Subchapter S, states that "Ordinarily, the persons who would have to include in gross income dividends distributed with respect to the stock of the corporation are considered to be shareholders of the corporation."

Petitioners challenge the validity of this regulation on the ground that it has no statutory basis and is in conflict with the legislative history. They rely on a portion of the report of the Senate Finance Committee discussing Subchapter S which stated:

"An election may be made to supply the tax treatment provided by this new subchapter only if all of the shareholders consent to this election. For this purpose the shareholders are those of record as of the first day of the taxable year in question, or if the election is made after that time, shareholders of record when the election is made."

S.Rep. No. 1900, 85th Cong., 2nd Sess., p. 87.

The Tax Court in Alfred N. Hoffman, 47 T.C. 218, 235 (1966), aff'd sub nom. Hoffman v. Commissioner of Internal Revenue, 391 F.2d 930 (5th Cir. 1968), in considering the contention that a shareholder of record rather than the beneficial owner of the stock must consent to the Subchapter S election, discussed the report of the Senate Finance Committee as follows:

"While this use of the words 'of record' furnishes some support for petitioner's position, it is entirely inconsistent with the basic congressional purpose to tax the undistributed corporate income only to the persons who are accountable for dividends paid by the corporation, and those persons are the real owners of the stock whether or not they are the shareholders 'of record.' In the circumstances, we must rely upon the all pervasive legislative purpose and not upon the foregoing fragmentary phrase in the committee report."

■ ■ Subchapter S allows shareholders of a small business corporation to elect alternative tax consequences resulting from stock ownership. Without a Subchapter S election the corporation is liable for corporate taxes, the shareholders cannot deduct corporate losses,

and only distributed dividends are subject to the personal income tax. If the election is made, the corporation is exempt from corporate taxes and the shareholders may deduct corporate net operating losses but must pay personal income tax on all corporate income whether distributed or not. The desirability of a Subchapter S election depends upon the individual tax considerations of each shareholder. The final determination of whether there is to be an election should be made by those who would suffer the tax consequences of it. Therefore, "shareholders" who must file a consent are not necessarily "shareholders of record" but rather beneficial owners of shares "who would have to include in gross income dividends distributed with respect to the stock of the corporation." Treas.Reg. § 1.1371–1(d)(1), *Alfred N. Hoffman,* supra.

■■ A treasury regulation which supplies the definition that Congress omitted must be sustained unless unreasonable and obviously inconsistent with the statute. Bingler v. Johnson, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969); Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). Treasury Regulation § 1.1371–1(d)(1) is consistent with the basic purpose of Subchapter S and reasonably implements the legislative mandate.

■ We conclude, as did the Tax Court, that William and Murdock MacPherson jointly invested in the 125 shares of Bowl stock issued to William MacPherson. Murdock MacPherson was the beneficial owner of one half of that stock in William MacPherson's name and must be considered a "shareholder" for the purpose of § 1372. Murdock MacPherson's failure to file a consent invalidates Bowl's Subchapter S election. Therefore, petitioners were not entitled to deduct their pro rata shares of Bowl's net operating loss for 1962 and 1963.

Petitioners next contend that the Tax Court erroneously drew an unfavorable inference from their failure to call Donald Minkler as a witness. Professor McCormick states,

> "It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable."

McCormick, Evidence § 249, p. 534 (1954)

Donald Minkler had been the accountant for the MacPherson brothers and MacPhersons, Inc. for 22 years. During trial, in an effort to establish William MacPherson as the sole owner of the stock, petitioners contended that Minkler had arbitrarily, erroneously, and without knowledge of the MacPhersons, made the bookkeeping and tax return entries regarding the stock. Minkler was present in court throughout the trial but was not called as a witness.

The Tax Court concluded that Minkler appeared to have special knowledge relevant to the case and his relationship with the MacPhersons was such that he would ordinarily be expected to favor petitioners. Because petitioners did not call Minkler as a witness, the Tax Court inferred that his testimony would have been unfavorable to them. Petitioners urge that no such inference was justified since Minkler was equally available to both parties and his testimony would have only been cumulative.

■ Where a potential witness is equally available to both parties, no inference should be drawn from the failure of a party to call such witness. Wagner v. United States, 264 F.2d 524, 531 (9th Cir. 1959) cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); Lannom v. United States, 401 F.2d 504 (9th Cir. 1968); Johnson v. United States, 291 F.2d 150 (8th Cir.

1961). The determination of the question of equal availability depends upon all the facts and circumstances bearing upon the witness's relation to the parties and not merely upon his physical presence at trial or accessability for service of a subpoena. The potential witness must be equally available both legally and practically. Samish v. United States, 223 F.2d 358, 365 (9th Cir. 1955); United States v. Beekman, 155 F.2d 580 (2nd Cir. 1946); McClanahan v. United States, 230 F.2d 919 (5th Cir. 1956); II Wigmore, Evidence § 288 (3rd Ed. 1940, 1970 Supp. p. 81); McCormick, Evidence § 249, p. 534 (1954). Both William and Murdock MacPherson testified that Minkler had erred in making the entries and allocations in question. Minkler had been their employee for 22 years and they had superior knowledge of the testimony that might be expected from him. In a practical sense, Minkler was not as available to the Commissioner as he was to the MacPhersons.

In order to justify the inference drawn from the failure to call a witness, the testimony of the uncalled witness must not be cumulative or inferior to the evidence already presented. Georgia Southern & Florida Railway Co. v. Perry, 326 F.2d 921, 925 (5th Cir. 1965); II Wigmore, Evidence § 287, p. 168 (3rd Ed. 1940). Here Minkler was in the best position to say whether he had made a mistake in making the bookkeeping allocation and the entries on the MacPhersons' tax returns. His testimony would not have been cumulative and would have been superior to the testimony of the MacPherson brothers that the accountant had erred. The Tax Court was justified in drawing the inference that Minkler's testimony would have been unfavorable to petitioners.

Finally, petitioners contend that the District Director abused the discretion reposed in him by Treas.Reg. § 1.1372–3(c) [1] and that the Tax Court erred in refusing to review the exercise of the District Director's discretion.

After the judgment of the Tax Court finding that Bowl's Subchapter S election was invalid due to Murdock MacPherson's failure to consent, petitioners requested of the District Director an extension of time, pursuant to Treas.Reg. § 1.1372–3(c), in which to file consents. All the petitioners offered to file new consents for the years 1962 and 1963.

The District Director denied the request. Petitioners then filed a motion in the Tax Court for retrial, further trial or reconsideration, seeking a review of the discretion exercised by the District Director. The Tax Court denied the motion.

The District Director advised petitioners that he was rejecting the request for an extension because the Tax Court had "issued an opinion in these cases . . . and because we do not feel the

---

1. Treas.Reg. § 1.1372–3(c):

"Extension of time for filing consents. An election which is timely filed for any taxable year and which would be valid, or would not have terminated, except for the failure of any shareholder to file a consent within the time prescribed in paragraph (a) or (b) of this section will not be invalid, or will not be treated as having terminated, for such reason if—
(1) It is shown to the satisfaction of the district director or director of the service center that there was reasonable cause for the failure to file such consent and that the interests of the Government will not be jeopardized by treating such election as valid, or as not having terminated,

(2) Such shareholder files a proper consent to the election within such extended period of time as may be granted by the Internal Revenue Service, and
(3) New consents are filed within such extended period of time as may be granted by the Internal Revenue Service, by all persons who were shareholders of the corporation at any time during the taxable year with respect to which the failure to consent would (but for the provisions of this paragraph) cause the corporation's election to be invalid or to terminate, and by all persons who were shareholders of the corporation subsequent to such taxable year and prior to the date on which an extension of time is granted in accordance with this paragraph."

circumstances of this matter meet the requirements of Regs. § 1.1372–3(c)." [2]

The fact that the Tax Court had issued an opinion invalidating Bowl's Subchapter S election was not a basis for refusing to allow petitioners an extension of time to file consents. At the time the opinion was filed, no request had been made to the District Director and nothing in the opinion precluded him from granting a subsequent request for extension.

Additionally, there is no valid basis for the District Director's determination that the requirements of Treas. Reg. § 1.1372–3(c) had not been met. Under the regulation the failure to file a consent will not invalidate the Subchapter S election and an extension of time to file new consents should be granted if it is shown to the satisfaction of the District Director that: (1) there was reasonable cause for the failure to file such consent, and (2) the government interest will not be jeopardized by treating the Subchapter S election as valid. There was reasonable cause for Murdock MacPherson's failure to file a timely consent. Murdock MacPherson was not a shareholder of record. He believed that whatever ownership interest he had in the shares did not necessitate his consent to Bowl's election. When the Internal Revenue Service disagreed with this position, the petitioners sought a judicial determination. Until the Tax Court issued its opinion, Murdock MacPherson did not know that his consent was required to consummate Bowl's election under § 1371. Furthermore, there is nothing to indicate that any government interest is jeopardized by now validating the Subchapter S election.

At the time of the Subchapter S election, petitioners, other than possibly the MacPhersons, did not know or have reason to suspect that Murdock MacPherson had any ownership interest in Bowl's stock. The District Director's failure to exercise his discretion so as to allow petitioners to file their consents deprives eight taxpayers of deductions taken in good faith ten years earlier and saddles each taxpayer with a substantial liability for back taxes. It is apparent that Treas.Reg. § 1.1372–3(c) was promulgated to prevent the harsh result reached in cases of this kind.

The District Director abused his discretion by arbitrarily refusing to allow petitioners an extension of time in which to file their consent to Bowl's Subchapter S election. Mensik v. C.I.R., 328 F.2d 147 (7th Cir. 1964); Bookwalter v. Mayer, 345 F.2d 476 (8th Cir. 1965).

We affirm the opinion of the Tax Court, except with regard to its refusal to review the exercise of the District Director's discretion, and order the District Director to grant petitioners an extension of time to file the consents pursuant to Treas.Reg. § 1.1372–3(c).

2. Letter dated March 28, 1969 from District Director to Joseph H. Trethewey, attorney for petitioners.