HICKS NURSERIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1513–70.    Filed May 6, 1974.

*Robert Anthoine* and *Glenn E. Coven, Jr.,* for the petitioner.
*Agatha L. Vorsanger,* for the respondent.

#### OPINION

SIMPSON, *Judge:* The respondent determined the following deficiencies in the petitioner's Federal income taxes:

| Taxable year | Deficiency | Taxable year | Deficiency |
|---|---|---|---|
| 1964 | $39,761.11 | 1966 | $91,514.67 |
| 1965 | 60,739.36 | 1967 | 61,319.15 |

The main issue which we must decide is whether a husband and wife, who each owned stock in a corporation individually and who owned other stock in the corporation jointly, are to be treated as 1 or 2 shareholders for purposes of the 10-shareholder requirement of section 1371(a)(1) of the Internal Revenue Code of 1954.[1] If we decide that the election was valid, then we must decide the subsidiary issue of whether the respondent had adequate grounds for revoking his authorization allowing a new shareholder to file a consent after the expiration of the ordinary period for filing such consent.

All of the facts have been stipulated, and those facts are so found.

The petitioner, Hicks Nurseries, Inc. (Hicks), was a New York corporation with its principal office in Westbury, N.Y., at the time of filing its petition herein. For the years 1964 through 1967, it filed its Federal income tax returns with the district director of internal revenue, Brooklyn, New York.

Hicks operated a landscaping and nursery business since its inception in 1853. It was incorporated in 1932; since then, and at least extending to the date of the trial in this case, all of its stock has been owned by the Hicks family, persons related to them, and certain employees. In 1963, the shareholders of Hicks decided that they wished to have the corporation taxed as a small business corporation in 1964. To qualify for such treatment, the number of its shareholders had to be reduced. Some shareholders had their stock redeemed, leaving 12 shareholders prior to December 31 of 1963. Four of the 12 remaining shareholders included two married couples, Edwin and Eloise Hicks and John and Esther Emory. Prior to that date, all their shares were held in their individual capacities; Edwin Hicks owned 413 shares, Eloise Hicks owned 43 shares, John Emory owned 17 shares, and Esther Emory owned 47 shares, of a total of 711 shares outstanding. On December 31, 1963, each husband and wife transferred 1 share into a joint tenancy with his other spouse.

On January 30, 1964, Hicks filed its election to be taxed as a small business corporation with the district director of internal revenue, Brooklyn, New York. The election contained the information that Edwin and Eloise Hicks and John and Esther Emory held shares individually as well as jointly. The attached shareholder consents also reflected their ownership pattern. For the years 1964 through 1967, Hicks treated itself as a small business corporation and filed its Federal income tax returns accordingly. The individual and joint ownership of both the Hicks and the Emorys was shown on the returns for the years 1964 and 1965, and for the years 1966 and 1967, the Hicks' joint ownership was shown.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

During the years 1964 through 1967, the shareholders of Hicks and their holdings remained basically stable. In 1966, Mr. Emory died, and Mrs. Emory acquired his shares and the shares they had held jointly. In 1967, two shareholders' interests were terminated, and two other shareholders were married and thereafter held some shares in joint tenancy with their respective spouses.

Mr. Emory died on March 6, 1966, and Mrs. Emory was issued letters testamentary on April 5, 1966. As executrix of the estate, she did not file the estate's new shareholder consent to Hicks' election within 30 days of her qualification as executrix. Mrs. Emory did not attempt to file the requisite consent until 1972. Hicks' counsel first learned of her failure to file the consent in January 1972. By a letter dated July 5, 1972, Hicks and Mrs. Emory requested from the district director of internal revenue, Brooklyn, New York, an extension of time in which to file the consent. Since there had been no action on the requested extension and since Hicks' counsel believed that it was necessary to resolve the consent question prior to the litigation over the validity of the election, on September 13, 1972, he wrote a letter to the director of the Internal Revenue Service Center in New York State requesting that the director act on the request for an extension. By a letter dated September 18, 1972, the director granted the request for an extension of time and allowed Mrs. Emory until October 18, 1972, to file the consent. However, on September 25, 1972, he wrote to Hicks revoking the extension because further study was needed to determine whether granting an extension would be proper. By a letter dated September 27, 1972, Hicks' counsel forwarded to the director Mrs. Emory's consent and similar consents for all the other people who had owned stock in Hicks between January 1, 1966, and September 18, 1972. All of the shareholders' signatures were dated September 21, 23, or 24, 1972. Hicks' counsel responded to the revocation by writing a letter on October 2, 1972, requesting that the director review and rescind his decision. The acting director wrote a letter on October 20, 1972, to Hicks' counsel, reaffirming the revocation and explicitly denying an extension. Ten days later, Hicks' counsel wrote again to the acting director, protesting his decision and asking for a reconsideration of the request. In a letter dated November 15, 1972, the acting director stated that when the extension was granted, the service center was unaware of the determination that the election was invalid. He revealed that according to the Internal Revenue Service instructions, an extension can be granted only if there is then in effect a valid election and that as soon as the service center became aware of the determination that the election was invalid, the service center revoked the extension. However, Hicks' letters of July 5, 1972, and September 13, 1972, contained the information that the validity of the original

election was being litigated in a case currently before the Tax Court.

For the years 1964 through 1967, the petitioner filed small business corporation Federal income tax returns and did not pay any Federal income taxes. In his deficiency notice, the respondent determined that Hicks did not qualify as a small business corporation and was subject to the Federal income taxes imposed by section 11 for all 4 years. The respondent further determined in his amended answer to Hicks' petition that a new shareholder's consent to Hicks' election had not been filed within the applicable period and that for such additional reason, Hicks did not qualify as a small business corporation for the years 1966 and 1967. In its reply, the petitioner alleged that the required consent was properly filed during an extension of time which the respondent had granted but had subsequently improperly revoked.

We must first decide whether the election made by Hicks in 1964 to be taxed as a small business corporation was valid. The answer turns on whether in the circumstances of this case, Mr. and Mrs. Hicks and Mr. and Mrs. Emory are to be considered two or four shareholders, for purposes of determining the number of shareholders of Hicks.

Section 1372(a) provides that "any small business corporation may elect * * * not to be subject to the taxes imposed by this chapter." Section 1371(a) defines "small business corporation"; subsection (a) (1) contains the requirement that such a corporation cannot have more than 10 shareholders. Section 1371(c) states, in part, that:

For purposes of subsection (a) (1) stock which—

\*   \*   \*   \*   \*   \*   \*

(2) is held by a husband and wife as joint tenants * * * shall be treated as owned by one shareholder.

Section 1.1371-1(d) (2) (i), Income Tax Regs., states, in part:

stock which—

\*   \*   \*   \*   \*   \*   \*

(b) Is held by a husband and wife as joint tenants * * * shall be treated as owned by one shareholder. For this purpose, if a husband or wife owns stock in a corporation individually, and the husband and wife own other stock in the corporation jointly, the husband and wife will be considered one shareholder. However, if the husband and wife each owns stock in the corporation individually, they will be treated as two shareholders. * * *

The petitioner relies upon the second sentence of the regulations and contends that such sentence applies to a situation in which both spouses own stock individually, as well as when only one spouse owns stock individually. It argues that the "or" in the phase "husband or wife" includes "and" when not inconsistent with the purposes of the provision. Sec. 1.368-2(h), Income Tax Regs. It recognizes that the words

of section 1371(c) apply only to the stock owned by the spouses jointly. In developing the regulations, the IRS recognized that there was a question as to the applicable rule when one spouse owned stock individually and other stock was owned by the spouses jointly. The regulations took the position that in such a situation, the spouses should be treated as a single shareholder. The petitioner suggests that there is no reason for drawing a distinction between that situation and the one in which both of the spouses also own stock individually. It asserts that the third sentence of the regulations applies only when the spouses own no stock jointly and therefore that sentence is not inconsistent with its suggested interpretation of the second sentence.

The respondent urges a different interpretation of the regulations. He contends that the second sentence only applies when one of the spouses owns stock individually. He takes the position that if both of the spouses own stock individually, the third sentence of the regulations is applicable.

In our opinion, the petitioner and its shareholders acted reasonably in adopting their interpretation of the regulations. Hicks had too many shareholders for it to qualify as a small business corporation, and the shareholders had to make some arrangement to reduce their number. Their reading of the regulations was certainly not unreasonable. Although the second sentence literally covered only a situation in which the spouses owned some stock jointly and one spouse owned stock individually, "or" is often used in the regulations when "and/or" is intended. Sec. 1.368–2(h), Income Tax Regs. An attempt to resolve the uncertainty by an examination of the reason for the provision does not exclude the interpretation adopted by the petitioner. If a husband and wife who own stock jointly are to be treated as a single shareholder even though one of them also owns stock individually, there is no reason to believe that the same rule should not apply when both of them also own stock individually. Nor was the petitioner unreasonable in reading the third sentence of the regulations not to apply in this situation. Although it may be suggested that the regulations deal with joint ownership and therefore the petitioner should have realized that the third sentence implicitly applied to a situation in which the spouses owned stock jointly, such a meaning is not expressed, and the implication is not compelling.

The circumstances of this case present an unusual situation. Under the tax laws, the petitioner and its shareholders had the option of having the corporation taxed as an ordinary corporation or electing to have it taxed as a small business corporation. They wished to qualify for the small business corporation treatment, and to achieve that objective, they adopted an interpretation of the regulations which was within the realm of reason and took the action necessary to qualify

the corporation for the small business corporation treatment. Had the regulations indicated clearly that in the view of the IRS, a husband and wife, both of whom owned stock individually as well as the stock which they owned jointly, would be treated as two shareholders, the shareholders of Hicks might have taken different action. For example, they might have transferred sufficient stock into joint ownership to eliminate completely one of the spouses as a separate owner. If we were to adopt the interpretation urged by the respondent, it would now be impossible for the Hicks' shareholders to go back and take the action which would qualify the corporation for the years 1964 through 1967. Thus, in this situation, the petitioner and its shareholders had a choice to make, and they made it on the basis of a reasonable interpretation of the regulations. For us now to adopt a more restrictive interpretation of those regulations would impose upon them an irreparable detriment. *Zellerbach Co.* v. *Helvering*, 293 U.S. 172 (1934) ; *Kean* v. *Commissioner*, 469 F. 2d 1183 (C.A. 9, 1972), affirming in part 51 T.C. 337 (1968), rehearing denied; *Columbia Iron & Metal Co.*, 61 T.C. 5 (1973). Although the shareholders took only the minimum action necessary to qualify the corporation in accordance with their interpretation of the regulations, that fact does not alter our conclusion. Surely, the interpretation of the regulations would not vary whether the spouses individually owned 1 share or 40 shares, in addition to their joint ownership.

In our judgment, the more restrictive interpretation of the regulations now urged by the respondent should not be applied retroactively to invalidate the action taken by the petitioner and its shareholders. *Haggar Co.* v. *Helvering*, 308 U.S. 389 (1940) ; *J. C. Penney Co.*, 37 T.C. 1013 (1962), affd. 312 F. 2d 65 (C.A. 2, 1962). Accordingly, we hold that Mr. and Mrs. Hicks were a single shareholder, that Mr. and Mrs. Emory were a single shareholder, and that the election made by the petitioner in 1964 was valid. In reaching that conclusion, we are not passing on what interpretations of section 1371(c) might reasonably be adopted and applied to future transactions.

Although the election was valid when made, the question of its continuing effectiveness in 1966 and subsequent years must also be considered. When Mr. Emory died in 1966, and his estate thereby acquired his shares, it became a new shareholder of the petitioner. Under section 1372(e)(1), unless a new shareholder files a timely consent to the corporation's election, the election terminates. Section 1.1372-3(b) of the regulations states that the new shareholder's consent must be filed within 30 days after the executor of the estate is qualified as such. Mrs. Emory qualified as executrix of the estate on April 5, 1966, but did not attempt to file the estate's consent until 1972. How-

ever, section 1.1372–3(c) of the regulations allows the respondent to grant an extension of time for consents to be filed in certain cases. In this case, the respondent granted an extension of time to file the consent but subsequently attempted to revoke such extension. The petitioner contends that the respondent acted arbitrarily in revoking the extension and that therefore the revocation was ineffective.

The respondent has maintained that the Tax Court does not have jurisdiction to review the revocation because it does not have equitable powers—its jurisdiction extending only to redeterminations of deficiencies. Secs. 7442 and 6214. However, in order to determine tax liabilities, all factors which bear on the matter must be considered. *Ben Perlmutter*, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967). In *Holmes & Janes, Inc.*, 30 B.T.A. 74 (1934), the issue presented was the effectiveness of a closing agreement. The respondent had revoked his consent to the agreement because of alleged fraud committed by the taxpayer in drawing up the agreement. He maintained that his action could not be reviewed as it was discretionary with him. In ruling that it did have such power, the Board stated that the "deficiency notice establishes the jurisdiction of the Board to hear and determine all the issues joined in an appeal therefrom." 30 B.T.A. at 79. Here, we must decide whether the petitioner qualifies as a small business corporation, and in order to make that decision, we must decide whether the consents filed in 1972 were valid.

Although the respondent made several general statements as to his reason for revoking the extension, such as needing additional time to consider the matter, the only specific reason given for the revocation was that in accordance with his interpretation of the law, an extension to file the consent cannot be granted unless an election to be treated as a small business corporation is then in effect. He suggests that because of his determination that the election was invalid, he should not have granted the extension. He urges that the proper procedure to be followed in this case is for the petitioner to wait until the Court has decided whether the election was valid and then present the request for an extension of time to file the consent. In our opinion, the respondent's position is not required by the law and would result in unnecessary and undesirable delay and litigation.

The petitioner had filed an election to be treated as a small business corporation, and both it and its shareholders had filed returns and proceeded on the assumption that the election was in effect for a number of years prior to the requested extension of time to file the consent. There is no apparent reason as to why the requested extension should not be acted upon merely because that election had been challenged and the issue was then pending in the Tax Court. Certainly, it does not follow, as the respondent appears to suggest, that

the election is to be treated as invalid for all purposes merely because of his determination to that effect.

Moreover, the procedure urged by the respondent would bifurcate the proceedings. In *Kean* v. *Commissioner*, 469 F. 2d 1183 (C.A. 9, 1972), the proceedings were so bifurcated. After the court determined that an individual was a shareholder of a corporation for purposes of the election under section 1372, the shareholder then requested an extension of time to file the required consent, and the IRS denied the request on the ground that the court had already acted. The circuit court rejected such position and held that the refusal to grant the extension was arbitrary and void. If the petitioner in this case were required to wait until the completion of the litigation over the validity of the election, it might encounter similar resistance on the part of the IRS, and it would then be necessary to have another trial on the reasonableness of the refusal to grant the extension. Such procedures would be contrary to Rule 1(b) of the Tax Court Rules of Practice and Procedure, which provides that cases should be disposed of speedily. Related or alternative propositions which affect the outcome of a case should be heard and ruled on at the same time. Cf. *Tribble* v. *Bruin*, 279 F. 2d 424 (C.A. 4, 1960). Consequently, we hold that because the reason given by the respondent for his revocation is insufficient, the revocation is not effective and that the estate's consent filed pursuant to the respondent's original grant of an extension of time for such filing is effective to prevent the termination of the election.

*Decision will be entered for the petitioner.*