**Lester TAUBMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff,**

v.

**Murton SCHLESINGER, Third-Party Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**INTERCONTINENTAL INDUSTRIES, INC., Defendant.**

**Civ. A. Nos. 4–72489 and 5–71759.**

United States District Court,
E. D. Michigan, S. D.

April 28, 1978.

J. Laevin Weiner, Southfield, Mich., for Taubman.

D. Patrick Mullarkey, Tax Division, Dept. of Justice, Washington, D. C., Pamela J. Thompson, Asst. U. S. Atty., Dept. of Justice, Federal Building, Detroit, Mich., for United States of America.

Murton Schlesinger, in pro. per.

Dean Carlton, Dallas, Tex., for Defendant Intercontinental Industries, Inc.

## OPINION

FEIKENS, District Judge.

In an opinion dated January 11, 1978, this court held that Lester Taubman and Murton Schlesinger, former president and vice-president respectively of the now-bankrupt corporation, Prebuilt Homes, Inc., are personally liable under § 6672 of the Internal Revenue Code for the failure of Prebuilt Homes to pay over to the government $156,565.34 in income and social security taxes withheld from its employees from August, 1969 until February, 1970, when the company finally ceased operations. This holding was based on a finding that both Taubman and Schlesinger were responsible and controlling corporate officers who willfully failed to pay over payroll taxes withheld from the corporation's employees. In a consolidated case this court held that Intercontinental Industries, Inc. (INI), Prebuilt's principal source of financing during the period in question, was liable to the government under § 3505(b) of the Internal Revenue Code for $62,598.94. This liability was arrived at by applying the 25% limit of § 3505(b) to the $250,395.78 that the court determined to have been advanced by INI to Prebuilt from August, 1969 to January, 1970 for the payment of wages, for which INI knew that no withholding taxes would be collected or paid.

The case is now before me on the government's motion for the entry of judgment. The sole disputed issue is whether or not prejudgment interest should be added to the $62,598.94 for which INI was held liable. The government contends that statutory interest must be added to the judgment against INI even if this results in INI's paying more than 25% of the amount it supplied to Prebuilt. INI contends that its total liability for taxes and interest cannot exceed 25% of the amount it supplied. The resolution of this issue depends upon the interpretation given to § 3505(b).

That section reads as follows:

(b) Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in *a sum equal to the taxes (together with interest)* which are not paid over to the United States by such employer with respect to such wages. However, *the liability* of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose. (Emphasis supplied)

The government would apply this section in the following manner. Given that the amount of taxes not paid over ($156,565.34) is more than 25% of the amount supplied by Intercontinental to Prebuilt, the judgment should be for the full 25% or $62,598.94. To this the government would add interest on the $62,598.94 from the due date of the employer tax return with respect to which that liability arose to the date of judgment. It computes that interest to date under § 6621 of the Internal Revenue Code to be $32,718.16. The government's position is based in part upon Section 31.3505–1(b) of the Treasury Regulations on Employment Taxes and certain examples given therein. That section provides in part as follows:

(b) Personal liability where funds are supplied.—

(1) In General. A lender, surety, or other person who [advances funds under circumstances such as were found in this case] * * * shall be liable in his own person and estate for payments to the United States of an amount equal to the sum of the taxes which are required by subtitle C of the Code to be deducted and withheld from wages paid on or after January 1, 1967 and which are not paid over to the United States by the employer, and interest from the due date of the employer's return relating to such taxes. However, the liability of the lender, surety, or other person for such taxes shall not exceed 25% of the amount supplied by him for the payment of wages. * * *

(2) Examples. The provisions of this paragraph may be illustrated by the following examples:

(1) D, a savings and loan association, advances $10,000 to Y for the specific purpose of paying the net wages of Y's employees. D advances those funds with knowledge that Y will not be able to make timely payment of the taxes required to be deducted and withheld from those wages by subtitle C of the Code. Y uses the $10,000 to pay the net wages of his employees but fails to remit withholding taxes due under subtitle C in the amount of $2,600. D's liability, under this section, is limited to $2,500, 25% of the amount supplied for the payment of wages to Y's employees, plus interest thereon.

(2) E, a loan company, advances $15,-000 to F, a contractor, for the specific purpose of paying $20,000 of net wages due to F's employees. E advances those funds with knowledge that F will not be able to make timely payment of the taxes required to be deducted and withheld from these wages by subtitle C of the Code. F applies $5,000 of its

own funds toward payment of these wages. The amount of tax required to be deducted and withheld from the gross wages is $4,500. The limitation applicable to F's liability for withholding taxes is $3,750 (25% of $15,000). However, because E furnished only a portion of the total net wages, E is liable for $3,375 of the taxes required to be deducted and withheld ($4,500 × $15,000/$20,000) plus interest thereon.

INI contends: (1) that the plain meaning of the term "liability" in the statute, § 3505(b), includes both taxes and § 6601 interest; and (2) the examples in Treasury Regulation § 31.3505–1(b) contradict the plain meaning of the statute and are invalid either as unauthorized creation of law by the Secretary of Treasury or as unreasonable legislative regulation that deprives the taxpayer of a benefit conferred upon it by Congress.

■ Because I conclude that the plain meaning of the statute limits the total liability of one in the position of INI, for taxes *and* interest, to 25% of the amount supplied, the government's motion for the entry of a judgment that would add prejudgment interest to 25% of the amount advanced by INI must be denied. I interpret the phrase "plus interest thereon" at the conclusion of each of the examples in Regulation § 31.3505–1(b) to refer to post-judgment interest. Any other interpretation would render them invalid as INI charges.

The plain meaning of the statute is that the lender, surety, or other person is liable for the taxes not paid plus interest up to 25% of the amount supplied. Two examples will illustrate this meaning. Assume that the amount of taxes withheld but not paid by company X was $200,000.00, that the interest accrued at the date of judgment was $50,000.00, and that lender Y supplied company X with $2,000,000.00 for the payment of wages, for which lender Y knew that no withholding taxes would be collected or paid. The "sum equal to the taxes (together with interest) which was not paid over to the United States by [the] employer with respect to [the] wages" would be

$250,000.00. However, the liability of [the] lender . . . [is] limited to an amount equal to 25 percent of the amount so supplied. . . ." In this example the limit would be $500,000.00 and lender Y would be liable for the entire amount of taxes and accrued prejudgment interest.

Next assume the same facts as in the first example, except that the amount supplied by the lender is $400,000.00. In this example the "liability" of the lender is limited to $100,000.00—again 25 percent of the amount so supplied.

■ In the absence of a specific expression of contrary legislative intent, the unambiguous terms of the statute govern its application. The interest from the due date of the return relates to the taxes due and must be included when the "liability" of the supplier is calculated. *See, Abrams v. United States,* 333 F.Supp. 1134 (S.D.W.Va. 1971), *fn.* 11. The case of *United States v. Smith,* [1975], 75–2 U.S.T.C. ¶ 9710 (D.C. Ohio, Sept. 3, 1975) was decided prior to the adoption of the instant regulation when the court had only the plain meaning of the statute and the legislative history to guide it. In that case the amount of taxes owed by the employer exceeded 25% of the amount supplied, and the court refused to allow any prejudgment interest to be added on to the limited liability of the supplier.

The United States Court of Appeals for the Sixth Circuit has stated that while the tax regulations are entitled to great weight, they should not be followed if they are "unreasonable" or "plainly inconsistent with the revenue statutes," nor can they "deprive a taxpayer of a benefit conferred by statute." *Brooks v. United States,* 473 F.2d 829, 832 (6th Cir. 1973). Consequently, the phrase "plus interest thereon" in the examples given in Treasury Regulation 31.3505–1(b) must be held to refer to post-judgment interest. If it were held to refer to prejudgment interest as the government contends, the regulation would be invalid as exceeding the grant of authority to amplify and implement the statute or as being unreasonable by depriving the taxpayer of a benefit conferred by Congress.

INI's liability is limited to $62,598.95, *i. e.,* 25% of the amount it loaned to Prebuilt.

An appropriate order may be submitted.