**UNITED STATES of America, Appellee,**

v.

**METRO CONSTRUCTION COMPANY, INC., Appellant.**

No. 77–3484.

United States Court of Appeals, Ninth Circuit.

Aug. 8, 1979.

D. Earl Ellis, Walter, Finestone & Richter, Los Angeles, Cal., for appellant.

Gilbert E. Andrews, Dept. of Justice, Tax Div., Washington, D.C., on brief; Micheal L. Paup, Dept. of Justice, Washington, D.C., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and EAST *, District Judge.

GOODWIN, Circuit Judge:

The Internal Revenue Service assessed Metro Construction Co. (Metro) for payroll taxes owed by its subcontractor, Triple A Estimating & Construction Service (Triple A), for the first two quarters of 1972. In an action for a refund, the district court held that because Metro advanced money

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

for its subcontractor's payroll, and Metro knew or should have known that Triple A would not withhold or pay its federal payroll taxes, Metro was vicariously liable for the taxes and interest under section 3505(b) of the Internal Revenue Code.

Metro does not contest its liability for the assessed amount of Triple A's payroll taxes; it disputes only a part of the judgment allowing the government to collect "interest as provided by law". Metro does not argue that the imposition of interest charges was in itself erroneous. It asserts, however, that section 3505(b) imposes a ceiling on the amount Metro will have to pay. This ceiling, Metro argues, is 25 per cent of the amount it advanced to Triple A.

The amount Triple A should have withheld in the first two quarters of 1972 came to $21,028.98: $5,210.30 in the first quarter and $15,818.68 in the second quarter. The district court tacked onto these amounts interest from the due dates of each of Triple A's quarterly federal tax returns. Interest on the $5,210.30 for the first quarter ran from April 30, 1972, and interest on the $15,818.68 ran from July 31, 1972.

In the first quarter, Metro advanced Triple A $33,081. Because 25 per cent of that sum is $8,270.25, and, even with interest, the $5,210.30 portion of the judgment for the first quarter will not exceed $8,270.25, Metro does not appeal the first-quarter portion of the judgment.

In the second quarter, Metro advanced Triple A $71,360.61, one quarter of which is $17,840.15. Because prejudgment interest charges will push the $15,818.68 liability for the second quarter over $17,840.15, Metro claims the district court should have limited the second-quarter portion of the judgment to $17,840.15.

Section 3505(b) of the Internal Revenue Code provides:

"(b) If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actua[1] notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 per cent of the amount so supplied to or for the account of such employer for such purpose."

The only dispute here stems from the failure of Congress to define "liability" in the final sentence of this subsection. Does the 25 per cent limitation apply only to the unpaid payroll taxes, or does it operate as a limit upon total liability, including taxes and prejudgment interest?

The government notes that, while the clause that imposes liability on the third-party supplier refers to the inclusion of interest, the last sentence, which limits liability, does not. Hence, the government argues that the limitation of "liability", as used in that sentence, should not apply to prejudgment interest because interest is not specifically mentioned there.

Close scrutiny of the subsection as a whole, however, exposes the weakness of this argument. While Congress thought it necessary to include a reference to "interest" in the clause imposing liability, it appended that reference to the word "taxes", not "liability": "[S]uch lender, surety, or other person shall be liable * * * in a sum equal to the taxes *(together with interest)* which are not paid over to the United States * * *." Congress may have thought that the word "liability" would include both taxes and interest, a reasonable thought. So thinking, Congress could have had good reason (brevity) for not adding a reference to interest when it said, "[T]he liability of such lender, surety, or other person shall be limited * * *."

Indeed, one district court has recently ruled that "liability" as used in the last sentence so clearly includes interest that

any regulation to the contrary is void. *Taubman v. United States*, 449 F.Supp. 520, 78–2 U.S.Tax Cas. (CCH) ¶ 9552 (E.D.Mich. 1978). While we do not agree with the *Taubman* court that the statute's meaning is plain, we reject the government's argument based on statutory language. Our reading of the subsection convinces us that the provision is so ambiguous that it has no "plain meaning" on the issue at hand. As Metro points out, the last sentence does not say "liability for taxes and interest", but it does not say "liability for taxes only" either.

The legislative history is equally inconclusive. The taxpayer points to language in a committee report that liability should be limited "in any event" to 25 per cent of the amounts supplied. But this history begs the question of the definition of the term "liability".

Metro next refers to section 6601(e)(1) of the Code, which provides that the use of the word "tax" in the Code generally includes interest charges as well as the basic tax. If section 6601(e)(1) applied to section 3505(b) at all, however, one wonders why Congress apparently felt it had to insert the parenthetical phrase "(together with interest)" after the word "taxes" in the liability clause of section 3505(b). Moreover, the problem with the limitation sentence is in defining "liability"; the word "tax", of which section 6601(e)(1) speaks, appears nowhere in that decisive final sentence.

In the first reported case dealing with the question before us, a district court concluded that a proper construction of section 3505(b) includes prejudgment interest in the definition of the "liability" limited. In *United States v. Terry P. Smith, Inc.*, 75–2 U.S.Tax Cas. (CCH) ¶ 9710, 36 Am.Fed. Tax Rep.2d (P–H) ¶ 75–5226 (N.D.Ohio 1975), the court limited liability to one fourth of the wages supplied (25 per cent of $46,-434.90, or $11,608.73). To this amount, it tacked on interest, but only a type of postjudgment interest, accruing from the time the court determined the liability and liquidated the amount. No interest was allowed for any of the time between the due date of the tax and the practical conclusion of the court action.

Despite *Terry P. Smith, Inc.* and *Taubman*, the government argues that Treas. Regs. § 31.3505–1(b)(1) compels affirmance. That regulation provides:

"(b)(1) * * * A lender, surety, or other person who—

"(i) Advances funds to or for the account of an employer for the specific purpose of paying wages of the employees of that employer, and

"(ii) At the time the funds are advanced, has actual notice or knowledge (within the meaning of section 6323(i)(1)) that the employer does not intend to, or will not be able to, make timely payment or deposit of the amounts of tax required by subtitle C of the Code to be deducted and withheld by the employer from those wages, shall be liable in his own person and estate for payment to the United States of an amount equal to the sum of the taxes which are required by subtitle C of the Code to be deducted and withheld from wages paid on or after January 1, 1967, and which are not paid over to the United States by the employer, and interest from the due date of the employer's return relating to such taxes. However, the liability of the lender, surety, or other person for such taxes shall not exceed 25 percent of the amount supplied by him for the payment of wages. The preceding sentence and the second sentence of section 3505(b) limit the liability of a lender, surety, or other person arising solely by reason of section 3505, and they do not limit the liability which the lender, surety or other person may incur to the United States as a third-party beneficiary of an agreement between the lender, surety, or other person and the employer. The liability of a lender, surety, or other person does not include penalties imposed on the taxpayer."

As the government points out, the limitation sentence of the regulation, unlike that of the Code section, declares that the 25 per cent ceiling limits "the liability of the lender * * * *for such taxes* * * *." From this, the government urges that the regulation clarifies any ambiguity in the statute by providing that all prejudgment

interest is collectible even though it might push the total liability of the third-party supplier of funds over 25 percent of the amounts supplied.

It would be helpful if the regulation did clarify the question, but in light of section 6601(e)(1) of the Code, discussed *supra*, we cannot hold that it does. About all we can say for the regulation is that it is a bootstrap effort to say what Congress left unsaid. As that section of the Code points out, the accepted meaning of references to "tax" includes interest on the tax. Therefore, the regulation, referring as it does to "taxes", does not resolve the ambiguity.

Finally, the government argues that one of the examples that follow the regulation's text supports its argument here. This is Example (1) of Treas. Regs. § 35.3505–1(b)(2):

> "*Example (1)*. D, a savings and loan association, advances $10,000 to Y for the specific purpose of paying the net wages of Y's employees. D advances those funds with knowledge that Y will not be able to make timely payment of the taxes required to be deducted and withheld from these wages by subtitle C of the Code. Y uses the $10,000 to pay the net wages of his employees but fails to remit withholding taxes under subtitle C in the amount of $2,600. D's liability, under this section, is limited to $2,500, 25 percent of the amount supplied for the payment of wages to Y's employees, *plus interest thereon*." (Emphasis added.)

This court generally follows treasury regulations unless they are unreasonable or obviously inconsistent with the Code. *Holman v. Commissioner*, 564 F.2d 283, 284 (9th Cir. 1977), *citing Kean v. Commissioner*, 469 F.2d 1183 (9th Cir. 1972). Here, however, the regulation's example is also unclear. As noted in *Taubman v. United States, supra*, the word "interest" in the example can be read to mean postjudgment, instead of prejudgment, interest. Moreover, one of the Internal Revenue Service's own Revenue Procedures, Rev. Proc. 67–41, § 4.02 (1967–2 Cum.Bull. 677, 678), contains equally clear language conceding the issue to the taxpayer:

> " * * * The liability (for a sum equal to the *taxes, together with interest*) of the supplier of funds under this provision is limited to 25 percent of the amount he supplies the employer for the specific purpose of paying wages." (Emphasis added.)

The government argues that Revenue Procedures are promulgated to outline procedures, not substance, and do not carry the weight of Revenue Rulings. Even if this is true, we believe taxpayers have a right to rely on their substantive content when other guideposts, such as the Code and Regulations, are as ambiguous as they are here. We think the law as stated in the Revenue Procedure, and in the district courts' holdings in *United States v. Terry P. Smith, Inc.* and *Taubman v. United States*, both *supra*, is the proper construction of the statute. The word "interest" in the example should be construed to mean only postjudgment interest; the word "liability" in the statute to include prejudgment interest.

Reversed and remanded.