MAX GERSH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gersh v. Commissioner
Docket No. 8422-76.
United States Tax Court
T.C. Memo 1984-522; 1984 Tax Ct. Memo LEXIS 153; 48 T.C.M. (CCH) 1260; T.C.M. (RIA) 84522; October 1, 1984. Carl Tunick, for the petitioner. Gerald A. Thorpe, for the respondent. TANNENWALD MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following *154 deficiencies in and additions to petitioner's Federal income tax: Addition to tax
Year
Income tax
[1] (Sec. 6653(b)) 1972
$242,596
$121,298
1973
91,400
49,260
1974
4,796
6,655
The main issue [2] for decision is whether petitioner is liable for the additions to tax for fraud under section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. *155 The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in New York, New York, when he filed his petition herein. Petitioner's 1972 Federal income tax return was filed on June 15, 1973. [3] No tax returns were filed by petitioner for 1973 and 1974. Services for the Home, Inc. (SHI) was formed by petitioner in 1951. During the years in issue, petitioner owned 96 percent of SHI's common stock and his brother, Joseph Gersh, owned the remaining shares. Petitioner was, during the years in issue, SHI's principal officer but Joseph Gersh and his wife, Roslyn (who was deceased at the time of trial), actively participated in the business. SHI's primary business activities consisted of carpet *156 and upholstery cleaning and restoration of the interiors of buildings damaged by fire or other casualty. In its cleaning/restoration business, SHI utilized both its own employees and, when necessary, independent contractors. SHI conducted some of its business under the name of Clean Craft, Inc. (hereinafter referred to as SHI). [4] On April 16, 1951, SHI (in the name of Clean Craft, Inc.) entered into an agreement with Gimbel Brothers Department Store (Gimbels), whereby Gimbels agreed to allow SHI to conduct business under the Gimbels name in exchange for a 10-percent commission on the contract price. Prior to October 12, 1973, Gimbels would, based on contracts submitted by SHI, advance to SHI 90 percent of the contract price before the work was completed. By agreement dated November 28, 1973, petitioner, on behalf of SHI, acknowledged that SHI owed Gimbels $544,308, plus interest, "for advances made by [Gimbels] to [SHI] on the basis of work purportedly in process in the department which was improperly shown on [SHI's] books." *157 During 1972 and 1973, Joseph and Roslyn Gersh or persons acting on their instructions prepared false invoices from subcontractors to SHI, i.e., in amounts larger than the subcontractors' charges, and issued checks to cash in payment thereof. The amounts in excess of the correct charges of the subcontractors were never paid to them. Included among the invoices were two from Westchester Decorators, Inc., at one point in 1972, petitioner requested a blank form from this subcontractor, telling it that the form would be used as a receipted invoice for cash being advanced by SHI. At another point in 1972, an estimate of a job was requested by petitioner of one Ralph Deiso (Deiso), a subcontractor, and payments were recorded as having been made to Deiso, even though Deiso did not receive the subcontract. Also during 1972 and 1973, one Dolores Pinto (Pinto), SHI's assistant bookkeeper, under instructions from Joseph or Roslyn Gersh, would frequently accompany subcontractors to SHI's bank, where checks of SHI payable to these subcontractors would be cashed and part or all of the proceeds taken by Pinto back to SHI's office and given to Joseph or Roslyn Gersh. On his 1971 *158 and 1972 returns, petitioner reported salary from SHI of $34,500 and $50,100, respectively. He received a salary from SHI of $29,900 during calendar year 1973 and $35,750 during calendar year 1974. In his notice of deficiency, respondent gave petitioner credit for withholding tax in the amount of $7,121 for 1973 and $8,514 for 1974. SHI was adjudicated a bankrupt by the United States Bankruptcy Court for the Southern District of New York on July 7, 1975. All of the relevant books and records of SHI, other than those stipulated, were lost or destroyed while in the hands of the trustee in bankruptcy, and such loss or destruction was not due to bad faith on the part of petitioner, respondent, Joseph Gersh, or Roslyn Gersh. OPINION Respondent has determined deficiencies and additions to tax for fraud for each of the taxable years 1972, 1973, and 1974. Petitioner failed to present any evidence in respect of the underlying deficiencies. Consequently, he has failed to carry his burden of proof, Rule 142(a), and respondent is entitled to a decision in his favor in the amounts of those deficiencies. The fact that petitioner has failed to carry his burden of proof, however, *159 does not establish that there is an underpayment of tax for any of the three years, much less that any such underpayment was due to fraud. Habersham-Bey v. Commissioner,78 T.C. 304, 312 (1982). With respect to the additions to tax under section 6653(b), respondent has the burden of proving by clear and convincing evidence that (1) there was an underpayment and (2) some part of that underpayment was due to fraud. Section 7454(a); Rule 142(b); Hebrank v. Commissioner,81 T.C. 640, 642 (1983). The existence of fraud is a factual question to be determined from all the facts and circumstances contained in the record. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). It requires proof of an intent to commit fraud, which has been described as an "intentional wrongdoing * * * motivated by a specific purpose to evade a tax known or believed to be owing." See Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). Mere suspicions are not sufficient to sustain a finding of fraud. Green v. Commissioner,66 T.C. 538, 550 (1976). However, since direct evidence of fraudulent intent is *160 seldom available, we are entitled to draw reasonable inferences from the conduct of the taxpayer and the surrounding circumstances. Grosshandler v. Commissioner,supra.[5]
*161 Critical to sustaining respondent on the fraud issue is a finding that there is clear and convincing evidence that petitioner underpaid his tax for each of the years at issue. The basic question in making this finding is how far we should go in drawing inferences in order to conclude that respondent has carried his burden of proof in this regard. The short answer is that, as to 1972, respondent asks us to go too far. Respondent first contends that petitioner was directly involved in a scheme to divert funds into his own pockets by the use of phony invoices and by skimming off cash as a result of those invoices and Pinto's visit to SHI's bank with subcontractors (diversions which seem clearly to have occurred). But, aside from petitioner's request for one invoice from Westchester Decorators, Inc., and one request for an estimate against which payments were recorded as having been made (see p. 4, supra), there is no evidence whatsoever that can be said to connect petitioner with such scheme. Moreover, even as to the Westchester Decorators, Inc., invoice, the only proof in the record herein is that Max Gersh accompanied another employee of SHI when the blank form, *162 which was used as an invoice, was requested; there is no proof that Max Gersh prepared the false invoice or gave instructions for its preparation. Similarly, there is no evidence that petitioner had anything to do with the Deiso estimate's being recorded as paid. Furthermore, Pinto testified that she visited the bank with subcontractors at the instance of Joseph or Roslyn and was never asked whether she did so at the request of Max Gersh. Respondent also has not established that petitioner actually received any of the proceeds of the fund. On brief, respondent concedes that there is no direct evidence that any of the funds ever reached petitioner. He made no attempt to call Joseph Gersh as a witness or to prove through evidence respecting Max Gersh's bank accounts or his use of cash expenditures for personal purposes, e.g., by an analysis of his net worth during the years at issue, that petitioner benefited from the siphoned-off funds. [6] Respondent insists, however, that, absent proof that such fund was used for SHI's purposes, it must be presumed that it was appropriated by petitioner for his own personal use, because petitioner, as the principal officer and the *163 96-percent shareholder of SHI, had sufficient dominion and control over SHI and its assets. The numerous cases cited by respondent to support the controlling-shareholder inference are all distinguishable. They either involved situations where fraud was not in issue, so that the burden of proof was on the taxpayer, or where fraud was contested and there was proof that the taxpayeractually received some of the diverted funds. [7]
*164 We have strong suspicions concerning petitioner's participation in the creation and use of the cash fund. But while strong suspicions can feed imagination, they cannot provide enough nourishment to enable respondent to carry his burden of proof. Green v. Commissioner,supra. The record herein simply does not contain clear and convincing evidence that petitioner participated in the diversion scheme or received any of the siphoned-off funds. We are unable to conclude that there was any underpayment of tax in respect of such funds and therefore hold that respondent has failed to carry his burden. Our holding is dispositive of the addition to tax for fraud for the taxable year 1972, [8] since the receipt of such funds was the sole basis of respondent's determination of fraud for that year. *165 Different considerations are involved in respect of the addition to tax for fraud for 1973 [9] and 1974 in view of petitioner's failure to file any return and report salary from SHI for each of those years. It is clear that petitioner received salary from SHI in the amount of $29,900 during calendar year 1973 and $35,750 during calendar year 1974. Assuming that petitioner had no other income, that he was entitled to the standard deduction for each of those years and two exemptions for 1973 and one for1974, [10] and that he is entitled to credit for amounts withheld from his salary in each of those years, he underpaid his tax by $2,651 in 1973 and $4,796 in 1974. Such being the case, we must determine whether such underpayments were due to fraud. Petitioner filed 1971 and 1972 returns in which he reported his salary from SHI. Thus, we think it clear that he knew that he was under a legal obligation to file returns and report his salary for 1973 and 1974. We hold that this knowledge, in combination with petitioner's failure to file returns (which, although not determinative, is an element to be considered, see Habersham-Bey v. Commissioner,supra at 312), *166 establishes by clear and convincing evidence the fraudulent intent on the part of petitioner. Petitioner's only explanation, advanced on brief, that there is no evidence that W-2 forms were not mailed to respondent and that the pendency of a criminal investigation and bankruptcy of SHI excused petitioner's failure to file isunconvincing. It is clear that, even with full credit for withholding, petitioner underpaid his tax. Moreover, the failure of SHI to file W-2 forms would not excuse petitioner from filing and reporting his salary nor would the pendency of the criminal investigation [11] and the bankruptcy of SHI.He received the salary, he knew he received it, and we are satisfied beyond question that he knew he was required to report and pay tax on that salary. [12] We hold that respondent has satisfied his burden of proof that part of petitioner's underpayment for 1973 and 1974 was due to fraud and that his determination of the additions to tax under section 6653(b) for those years should be sustained. [13]
*167 To reflect the conclusions in this opinion, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent's answer pleads that if we determine that petitioner is not liable for the section 6653(b) additions, we find, in the alternative, that petitioner is liable for additions to tax for 1973 and 1974 pursuant to sections 6651(a), for willful failure to timely file income tax returns, and 6653(a), for negligent and intentional disregard of rules and regulations. Since we find that the addition to tax for fraud was correctly determined for 1973 and 1974 (see pp. 10-12, infra↩), we have no need to address this alternative contention.
3. On April 14, 1973, petitioner executed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return. Respondent has not contended that this form was not timely and properly filed. Sec. 1.6081-4, Income Tax Regs.↩ By the same token, petitioner does not contend that the deficiency notice herein, dated June 10, 1976, was not issued within the normal three-year statute of limitations period.
4. Since all the income and expenses of Clean Craft, Inc., were recorded on SHI's books, we shall only refer to SHI.We note that neither party has attached any separate significance to Clean Craft, Inc.↩
5. The following documents offered by respondent were received in evidence at trial with the right reserved to petitioner to pursue on brief his objections on best evidence and/or hearsay grounds: (1) work papers of SHI's books prepared by Revenue Agent Eber (Eber); (2) a list, prepared by Mary Ann Stravello, daughter of Deiso, of payments made by SHI to Deiso, and (3) certain notations written on invoices from subconstrators found in SHI's books and records. We have carefully considered the arguments of the parties (who are in agreement that bad faith was not involved in the loss or destruction of most of SHI's books and records, see Rule 1004 of the Federal Rules of Evidence↩) and have concluded that petitioner's objections are not well taken and that the foregoing documents were properly admitted pursuant to the exceptions contained in Rule 803(5) (past recollection recorded), Rule 803(6) (business records) and/or Rule 803(24) (other exceptions) of said Rules.
6. Revenue Agent Eber's work papers indicate that the bulk of the SHI checks payable to cash were endorsed "Gimbels - for deposit." This seems clearly to indicate that the proceeds were deposited into another account (from which withdrawals might have been traced) although we are puzzled that the drawer of a check to cash would deposit the proceeds in its own bank account. Perhaps there were two accounts, one in the name of SHI on which the checks were drawn and one in the name of Clean Craft, Inc. (or Gimbels) in which the proceeds were deposited. Respondent has offered no explanation in regard to this aspect of the case. ↩
7. Respondent contends that his position is supported by the adverse inference that should be drawn from the failure of petitioner to testify or to elicit the testimony of Joseph Gersh, citing Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). That contention is without merit. Any such adverse inference cannot remedy the lack of proof by respondent, upon whom the burden of proof rests. See McCormick on Evidence (1984 ed.), p. 807. We likewise reject respondent's attempt to bolster his position by pointing to petitioner's failure to testify although he was in the courtroom throughout the trial. Such physical presence indicates, of course, that petitioner was available to both parties as a witness. Admittedly, such presence may not be sufficient to justify drawing any adverse inference against respondent (who has the burden of proof) from his failure to call petitioner since he was obviously a hostile witness and consequently may not be considered as equally available to both parties. See Kean v. Commissioner,469 F.2d 1183, 1187-1188 (9th Cir. 1972), revg. on other grounds 51 T.C. 337 (1968); McCormick, supra↩ at 806-807. But this is a far cry from requiring that an adverse inference be drawn against petitioner as an element in deciding whether respondent has carried his burden.
8. Given this holding, we have no occasion to delve into the question of whether SHI had sufficient earnings and profits to support respondent's assertion of a constructive dividend in respect of the siphoned-off funds or petitioner's basis in his stock, in the event of insufficient earnings and profits, or the existence or extent of respondent's burden of proof in respect thereto. See United States v. Ruffin,575 F.2d 346, 351 n. 6 (2d Cir. 1978); DiZenzo v. Commissioner,348 F.2d 122 (2d Cir. 1965), revg. and remanding T.C. Memo. 1964-121; Foster v. Commissioner,T.C. Memo. 1965-246, revd. in part and affd. in part 391 F.2d 727↩ (4th Cir. 1968); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders (4th ed. 1979), p. 7-41.
9. Part of respondent's asserted addition to tax for fraud for 1973 also rested on petitioner's alleged receipt of siphoned-off funds, but his position is even weaker than with respect to 1972, because none of the evidence of record as to the siphoning-off of funds relates to 1973. ↩
10. In his deficiency notice, respondent treated petitioner as a married person filing separately for both 1973 and 1974 for the purpose of the standard deduction and gave petitioner an exemption for his son for 1973 but not for 1974. Petitioner has given us no indication that respondent's treatment is incorrect, and we have accordingly made our calculations on the same basis. Petitioner has made no claim for deductions beyond the standard deduction or for additional exemptions. See Rivera v. Commissioner,T.C. Memo. 1979-343↩. 11. Apparently there was a criminal prosecution and trial of petitioner, presumably relating to his tax liabilities, but, for reasons of their own, neither party chose to provide the Court with any illumination with respect thereto. ↩
12. In this context, the failure of petitioner to testify gives rise to an adverse inference (see Wichita Terminal Elevator Co. v. Commissioner, n. 7, supra↩), although we would reach the same conclusion without such inference. 13. Although, for the purpose of determining the existence of fraud, we assumed that petitioner was entitled to credit for amounts withheld from his salary in 1973 and 1974, it is clear that, for the purpose of computing the additions to tax under section 6653(b) for those years, such amounts are not considered. Section 6211(b)(1); Cirillo v. Commissioner,314 F.2d 478↩ (3d Cir. 1963), affg. on this issue a Memorandum Opinion of this Court.